JOHN A. LORING, APPELLANT, vs. W. L. WITTICH, APPELLEE.

1. The Constitution exempts a certain amount of personal property to "the head of a family residing in this State:" *Held,* That an averment that a party " is and has been a citizen of said State since May, 1876; that at that time he came to Pensacola in said State *from Maine,*

bringing with him his family, with the intention of making said city
his permanent home; that said city has been his home ever since
that time, with the intention that it shall continue to be his home,
and with no intention of changing his Florida home or citizenship
by removing elsewhere;" is a sufficient statement that he is the head
of a family residing in this State to entitle him to claim an exemp-
tion.

2. In claiming the exemption of personal property levied upon by the
sheriff, the only fact necessary to be sworn to under Section 7, Chap-
ter 1715, Laws of 1869, is that the inventory "contains a true and per-
fect list of all his personal property."

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion of the
court.

*Geo. P. Raney* for Appellant.

There are but two questions involved in this case to
which the consideration of this court is invited:

1. Did the court err in making the decree of September
29th, 1877, and decreeing that the personal property there-
in referred to was subject to sale under the execution, and
not exempt from sale under the exemption laws of Florida?

2. Did the court err in refusing the motion to amend the
answer?

The point involved in the first question is, does the an-
swer of the appellant state such facts as entitle the appel-
lant to the benefit of the exemption laws of Florida? The
cause having been heard upon bill and answer, all the ma-
terial facts stated in the answer are admitted.

The language of the Constitution (Art. IX., Constitution
of 1868) is: "A homestead to the extent of one hundred
and sixty acres of land, or the half of one acre within the
limits of any incorporated city or town, owned by the head
of a family residing in this State, together with one thou-
sand dollars worth of personal property and the improve-

ments on the real estate, shall be exempt from forced sale under any process of law," &c.

The language of the answer asserts that appellant " is and has been a citizen of the said State (Florida) since or about the 18th day of May, 1876 ; that on or about the day above mentioned he came to Pensacola in said State from the State of Maine, bringing with him his family, with the intention of making said city his permanent home ; that said city has been his home ever since about the day afore-said, with the intention that it shall continue to be his home, and with no intention of changing his Florida home or citizenship by returning to the State of Maine or removing elsewhere."

We respectfully submit that the language used in the answer shows an existence of the facts necessary to constitute a right of exemption, tested by the language and meaning of the Constitution. It shows that Florida is his permanent home, and that he is a citizen ; that he came, bringing with him his family, with the intention of making it his permanent home ; that he has no intention of changing such home or citizenship by removing to the State of Maine or elsewhere. It shows him to be the head of a family residing in this State.

The terms " resident " and " inhabitant " are not synonomous ; the latter implies a more fixed and permanent abode than the former, and frequently imparts many privileges and duties to which a mere resident could not lay claim or be subject. (Farewell Co. vs. Devenport, 40 Ill., 197.) In 2d Gray it is said " residence " and " habitancy " are usually synonomous. A person may have two or more residences. Gilman vs. Gilman, 52 Maine, 165 ; College vs. Gore, 5 Pick., 370.

In McKenzie vs. Murphy, (24 Arkansas, 155,) it was held that the word " citizen," as used in the homestead law,

meant a resident of a county or town without any implication of political or civil privileges.

Residence should of course be actual, not constructive. Cary vs. Tice, 6 Cal., 625 ; Rix vs. McHenry, 7 Cal., 89.

A person who does not intend to reside permanently in the State can enjoy the benefits of the homestead law while he actually resides here upon his property, making it his home. Danley vs. Ayses, 23 Cal., 108.

The residence in Florida as to homestead and exemption cases is the same. The Constitution makes no distinction.

We contend that the answer shows an intent upon the part of the appellant to remain permanently in Florida ; that his residence was actual, not constructive ; that it also shows that his family were residing in Florida with him. It shows that they came here, and there is nothing showing that they have ever left, " *animo non revertendi.*" The presumption is that they still remain here.

Not only does the answer show a residence, but it even shows Florida to be the domicile of the appellant. Smith & Armstead vs. Croom, *et als.*, 7 Fla., 81.

Domicile of the husband is the domicile of the wife. Davis vs. Davis, 30 Ill., 180.

*E. A. Perry* for Appellee.

The court did not err in its decree ; the hearing upon bill and answer could not have resulted otherwise. The answer did not deny the material allegations of the bill. Even to construe it most favorably to the party who made it, rather than the reverse as required by the rule, it did not set forth such facts as entitled appellant to exemption, which is allowed only to the " head of a family residing in this State." Note the language and punctuation of Sec. 2, Art. IX., Constitution, page 22, which leaves no question but that the exemption is confined to families residing in this State.

The very issue presented by the bill was, that appellant was not "the head of a family residing in this State." How easy for him to have alleged that he was. And at the hearing, when complainant contended that to answer the bill and show that he was entitled to the exemption claimed, the appellant must set forth that the family of which he claimed to be head resided in this State. And the court gave him an opportunity of doing so. He declined; and then, after decree against him, claimed the right, to so amend his answer, upon the ground that the proper allegation was lacking through "inadvertence and mistake." That has very much the appearance of trifling with a court, and for this court to give him the relief he seeks by his appeal would seem to be offering a premium for such trifling.

That no one but the head of a family residing in this State is entitled to exemption is manifest, not only from the language of the Constitution, but also from the well recognized purpose of the homestead provision, i. e., to prevent families in the State from being forced to absolute want and privation, and becoming a burden upon the State, the counties, or the towns. While that purpose should be kept in view and to that end, the homestead laws should be construed somewhat liberally. Yet it should be kept in mind that creditors have rights which prevent these laws from being extended by construction. Ward vs. Hughes, 16 Min., 159.

The appellant argued in the court below that where the husband lives, there is the domicile and residence of the wife. This fiction does not obtain in applying the homestead laws. The phrase "residing in this State" means an actual, not a constructive residence. Rix vs. McHenry and Wife, 7 Cal., 89; ib., 245.

If residence of family were not necessary, there would be no end to the fraud and injustice that would result. Cary vs. Tice, 6 Cal., 625.

This State might, at the expense of creditors, be support-ing families in Georgia, Maine, and the whole world. It is enough to apply money, which rightfully belongs to others, to the support of the families which reside in her own bor-ders.

How absurd for the court below to have allowed an amendment after decree which would have rendered the decree ridiculous.

Even though his honor could have been made to believe that the appellant, through "inadvertence and mistake," took up half a page of his answer to avoid the use of twelve words which would have done away with any hear-ing upon bill and answer. If in point of fact appellant had been the head of a family residing in this State, and after decree had any remedy for the results of his obstinate refu-sal to act upon the Chancellor's suggestion, it must have been reached by some other method ; for instance, by peti-tion to set aside decree and for rehearing, certainly not by motion to so amend his answer as to make decree errone-ous.

THE CHIEF-JUSTICE delivered the opinion of the court.

The appellee filed his bill alleging that he recovered a judgment against Loring, and had execution thereon in the hands of the sheriff, (Hutchinson); that the sheriff levied on the interest of Loring in a certain schooner; that Loring then made and delivered to the sheriff an affidavit in which he claimed to be the head of a family and a resident and citizen of this State; and that an inventory contained therein was a true and perfect list of all his personal prop-erty, and claimed that the said property, including the schooner, was exempt, and should be exempted, from levy and sale, and released from levy under said execution; that the sheriff then appointed appraisers, who appraised

the property at $480.12. Loring then demanded that the property be delivered to him as exempt from forced sale under the laws of this State.

Complainant alleges that the affidavit, a copy of which is annexed to the bill, "is insufficient to found a claim of exemption upon under the constitution and laws, and furnishes no warrant to the sheriff for the appraisement, and will not justify him in releasing the vessel from said levy and delivering her to Loring."

The bill charges as a matter of fact that Loring is not entitled to the exemption of the property, because he is not the head of a family residing in this State, but that the said claim of exemption is false and fraudulent, and that the sheriff is about to deliver the said vessel into the possession of Loring, and that Loring is about to remove the same out of the State.

The bill then prays that the personal property mentioned in the said inventory be decreed to be subject to sale on the execution for the satisfaction of the judgment; that an injunction be granted restraining Loring "from further proceeding with the said claim of exemption and from receiving the said vessel from said Hutchinson," and restraining Hutchinson from further proceeding with the said claim of exemption or from delivering the vessel to Loring under said pretended claim.

The affidavit of Loring, annexed to the bill, states that Loring " is the head of a family and a resident and citizen of the State of Florida, and that the inventory following contains a true and perfect list of all his personal property, which he hereby points out and designates to the sheriff of said county, to-wit: [Then follows a list of the property, including an interest in the vessel.] All of which property he claims to be exempt from forced levy and sale under the constitution and laws of the State of Florida, and demands that when levied upon the same may be valued according to

law." Signed and sworn to by John A. Loring. After the appraisal Loring demanded the release and return of the property, and at this stage the bill was filed.

Loring answered that he was entitled to the exemption of the property, and asserts that he is and has been a citizen of this State since the 18th day of May, 1876; that he at that time "came to Pensacola, in said State, from the State of Maine, bringing with him his family, with the intention of making said city his permanent home; that said city has been his home ever since about the day aforesaid, with the intention that it shall continue to be his home, and with no intention of changing his Florida home or citizenship by returning to the State of Maine or removing elsewhere." He further denies that on the delivery to him of the vessel he will remove the same from this State. A preliminary injunction was granted, and upon a hearing on bill and answer a final decree was made, a motion by defendants to dismiss the bill for want of jurisdiction having been previously denied.

The court decreed that the personal property mentioned in the inventory was subject to sale under the execution in the hands of Hutchinson, the sheriff, toward the satisfaction of the judgment, and that Loring and Hutchinson be enjoined from further proceeding with or under the claim of said Loring, to exempt said property from levy and sale under said execution, and that said Loring pay the costs.

A motion to amend the answer by inserting after the words "head of a family" the words "residing in the State of Florida," on the ground that they had been omitted by inadvertence and mistake, was made after the announcement by the judge of his judgment and the decree, but before it was signed and recorded, but the judge denied the motion on the ground that the court had previously suggested that he would permit the amendment; but counsel did not then make the motion, as he insisted that the residence of the

family was not necessary to the right to exemption, and that it was substantially set forth in the answer.

As to this motion it is difficult to say that it should have been granted at any stage, because the words "head of a family" do not occur in any part of the answer, and we can perceive no effect to be given to the answer or to the words by inserting them.

The law relating to the method of designating personal property is found in sections 7 and 8 of "an act providing for setting apart a homestead and personal property to be exempted from forced sale under process of law," approved June 23, 1869. Section 7 provides that when a levy shall be made upon personal property which may be exempt from levy and sale, the officer shall, if desired by the debtor, his agent or attorney, make an inventory of the whole of the personal property of the party against whom such process issued; and the party shall point out the whole of his personal property to the officer, and make affidavit that the inventory contains a true and perfect list of all his personal property. It is then the duty of the officer to summon appraisers and have them appraise the property on their oaths at its cash value, and sign the appraisement, with the officer, after notice to the judgment creditor. Section 8 authorizes the person entitled to such exemption, his agent or attorney, to select from such inventory, when exempted, an amount of such property not exceeding the amount or value exempted.

On the appraisement being signed by the appraiser, the debtor demanded it from the sheriff as exempt from sale. It is claimed by the complainant that the affidavit is insufficient to found a claim of exemption, and furnishes no warrant for the appraisement and the delivery of the property to Loring. It will be observed on reading the statute that when personal property levied on is claimed to be exempt from sale, the only oath required of the claimant is that the

inventory " contains a true and perfect list of all his personal property." The law points out no form of proceeding by which the claimant shall prove to the satisfaction of the sheriff that he is *entitled* to claim an exemption. If he makes the affidavit and asserts on oath or otherwise to the sheriff that he is entitled to the exemption of the property designated, the sheriff must satisfy himself as best he may, and take such precautions as he would under other circumstances to protect himself. He is invested with no judicial power to decide upon any evidence of the right to claim exemption. Having levied upon the property, he is probably liable to the creditor if he releases it to a party not entitled to it. If he refuses to release it, the claimant may, by replevin, try the title and the right of exemption. Or, perhaps, the sheriff may protect himself by summoning an inquest. 1 Tidd's Pr., 922, 928; 8 Johns., 188; 4 T. R., 633; 6 T. R., 88. But as counsel have not considered this point we will not pursue it.

The omission of the party claiming the exemption to swear that he is " the head of a family residing in this State," in the affidavit annexed to the inventory, does not preclude him from claiming and proving that he is entitled to have the property exempted from sale.

The point of the argument is whether the defendant, by his answer, sets out facts which show that he is a person entitled to claim this exemption. The bill alleges that his claim is false and fraudulent because the defendant, Loring, is not, in fact, the head of a family residing in this State, and complainant insists that the answer does not deny this allegation, and does not show that he is. It is therefore necessary to examine the answer and ascertain whether it is sufficient in this respect.

The constitution declares that a homestead (of a certain extent) " owned by the head of a family residing in this State, together with one thousand dollar's worth of personal

property, and the improvements on the real estate, shall be exempted from forced sale under any process of law, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists."

The answer asserts that Loring is and has been a citizen of this State since about the 18th of May, 1876, at which time he came to Pensacola, in this State, from Maine, bringing with him his family, with the intention of making said city his permanent home; that said city has been his home ever since that time, with the intention that it shall continue to be his home, and with no intention of changing his Florida home or citizenship by returning to the State of Maine or removing elsewhere.

The constitution does not require that a person claiming exemption shall be a married man, but he must be the head of a family. How large his "family" must be is not prescribed, but he must be the head of a family. When he asserts, therefore, that he came to this State over a year before, bringing with him his family, with the intention of making this his permanent home, and that this State has, ever since he came into it, been his home and with no intention of removing elsewhere, he alleges facts which show *prima facia* that he is the head of a family residing in this State, and unless it is shown that some of these material facts are not true, the case required by the constitution to be made out by him is substantially shown. That he came with his family and established his home at the city of Pensacola with intent to make it his permanent home, and has made it his permanent home ever since he came to it, implies and asserts that he is the head of his family; that his residence and that of his family are in this State, and that they remain here, or at least that their residence is still here. If they are absent from the State temporarily or otherwise, that fact does not appear in the pleadings.

If these allegations of the answer are true, the domicil

of the defendant is in Florida, and the laws of Florida will control the descent of all the property he owns here. "The determination of that locality," says the court in Smith and Armistead vs. Croom, 7 Fla., 152, 153, "is the subject of evidence, and that evidence must establish two points—first, an actual residence, and, secondly, the deliberate intention to make it his home, in the acceptation in which it is used in the foregoing citations."

The allegation that he came "bringing with him his family" and established a residence here, is an assertion that he controls the family as its head. No other inference can be legitimately drawn from the allegation as it stands. Were the allegation as full and explicit as the complainant insists it should be, and the proof should be no more than the statements contained in this answer, it would be very difficult to say that the answer was not *prima facia* proved to be true.

According to the answer, the defendant established his residence here with his family, whom he brought for the purpose of residing here. The cases in California referred to by counsel for appellee, (Rix vs. McHenry and wife, 7 Cal., 89, and Cary vs. Tice, 6 Cal., 625,) relate to mortgages given by a husband before the wife or family occupied the land mortgaged, and before the wife came into the State. It was held that there was no actual residence of the family upon the land, and it was, therefore, not stamped with the character of a homestead. Had the proof been, as in the answer here, that the man and his family were in possession, we think the court in California would not have been put to the trouble of deciding the case.

We shall not undertake to decide what may constitute the "family" of a person to enable him to claim the benefit of the exemption laws, nor whether the appropriate remedy has been sought in this case by bill in equity—the subject

of it being personal property—as the latter question has not been considered or presented by counsel.

The decree that the property described in the bill should be subjected to sale on execution, and that the defendant be enjoined from claiming an exemption thereof and for costs, is reversed, and this cause is remanded with directions that such other proceedings may be had, according to the practice of the court as the court may be advised is proper.