214 So.2d 639 (1968)
In re ESTATE OF Garrett Edwin VAN METER, Deceased.
Garrett Oliver VAN METER, Appellant,
v.
Lucille VAN METER, Widow, and Richard M. Robbins, As Administrator C.T.A. of Estate of Garrett Edwin Van Meter, Appellees.
No. 67-508.
District Court of Appeal of Florida. Second District.
October 16, 1968.
*640 Edmund S. Whitson, Jr., of Baker, Whitson & Stewart, Clearwater, for appellant.
C.E. Ware, Clearwater, for appellees.
PIERCE, Judge.
This case is an appeal from a final order finding a certain described parcel of real estate to be the homestead of decedent owner, and as such to descend to his widow.
The sole point before this Court is the propriety of such finding by the County Judge of Pinellas County in the light of the undisputed facts existing.
Garrett Edwin Van Meter died on October 7, 1966, and for over 11 years prior thereto had been living alone on a ten acre tract owned by him near Ulmerton Road in Pinellas County, Florida. On October 24, 1966, the decedent's will dated January 3, 1956 was admitted to probate in the County Judge's office of said County. The will named as decedent's devisee his nephew Garrett Oliver Van Meter.
At the time of his death, decedent was married to one Lucille Van Meter but they had been separated since March 22, 1955. The following day, March 23, 1955, she filed in the Pinellas County Circuit Court a suit for Separate Maintenance unconnected with divorce. They had no children or other dependents. When the Separate Maintenance suit was filed he continued to live alone until his death on the ten acre tract, which he had originally purchased in his individual name in 1945, and had lived on thereafter. In addition to this tract, he owned also in his own name an additional separate two and a half acre tract some distance away in Pinellas County.
Shortly after suit was filed he prepared a separate home for his wife to live in on the two and a half acre tract and he also continued otherwise to support her under a temporary Court Order she obtained in the law suit. This arrangement continued until 1962, when Garrett, with consent of his wife Lucille, sold the two and a half acre tract, dividing between them the net proceeds of the sale, and Garrett thereupon arranged to pay the rent on a place in Clearwater for his wife to live. This continued until decedent's death in October, 1966, Garrett living alone on the ten acre tract and Lucille living alone in the rented Clearwater premises, with Garrett making his regular weekly payments for her support and also her monthly rental payments.
In the meantime the Separate Maintenance case remained in status quo until 1961, during which year Lucille changed counsel, the case went to final hearing, and on May 23, 1961, Final Decree was entered awarding her permanent Separate Maintenance. Support payments were made by Garrett, first pursuant to the temporary order, and later pursuant to the Final Decree after it was entered. The Final Decree permanently enjoined Garrett "from in anywise interfering" with Lucille and provided that he "shall at no time visit the premises in which" she lived.
The foregoing facts and circumstances transpiring prior to decedent's death were evidenced in the probate proceeding by a signed "Stipulation of Facts", which also contained the observation that, after the separation in 1955, Lucille "stated she would never live with him again".
On August 31, 1967, the Administrator c.t.a. filed in the probate proceeding a "Suggestion of Homestead Status" setting forth that at the time of his death Garrett was living "separate and apart" from his wife Lucille, and containing generally the facts aforesaid, and suggesting that the County Judge determine the question of the homestead status of the ten acre tract. At the hearing on the "Suggestion", the evidence consisted of the original record of the Circuit Court Separate Maintenance suit, together with the written Stipulation of Facts aforesaid.
On October 5, 1967, the County Judge entered final order finding that the decedent, "although living separate from his *641 wife, was responsible for her and did support her up to the time of his death and although he was living alone on his resident property, it was, in fact, the family residence and should have been available to his wife for her refuge during his lifetime and for her use after the death of her husband". The order thereupon adjudged that the described ten acre tract "be and the same is found to be the homestead of the decedent" and to descend to the widow. We reverse.
The facts in the case are undisputed, being evidenced and presented to the lower Court in the form of a written stipulation. In our view, the ten acre tract upon which decedent was living when he died was not a homestead as contemplated by the Constitution and laws of Florida, so as to descend to his widow irrespective of will. We make clear that the widow's rights otherwise in the estate, such as dower, are in no way prejudiced or affected.
It is axiomatic that in Florida "a homestead is not subject to testamentary disposition". Scull v. Beatty, 1891, 27 Fla. 426, 9 So. 4; Spitzer v. Branning, 1939, 139 Fla. 259, 190 So. 516; Brickell v. Di Pietro, 1941, 145 Fla. 23, 198 So. 806.
But a wife, in order to acquire homestead under the Florida Constitution when there are no other dependents, must not only survive her husband, but the family relationship of husband and wife must have existed at the time of the husband's death, and the property must also have been occupied at the time of his death by the family, of which he was the head. Weitzner v. United States, C.C.A. 5 1962, 309 F.2d 45, cert. den. 372 U.S. 913, 83 S.Ct. 727, 9 L.Ed.2d 720. Such is a homestead in the Constitutional sense.
A home is not necessarily a homestead, even though it is occupied as a residence and even though the person so occupying it is the owner. The crucial qualifying feature is that such resident owner must be the head of a family consisting of himself and at least one other person living together therein in relationship of one family. This is established by a long line of Florida cases, from Miller v. Finegan, 1890, 26 Fla. 29, 7 So. 140, 6 L.R.A. 813, to LaGasse v. Aetna Insurance Company, decided by this Court on August 7, 1968, 213 So.2d 454.
The overwhelming weight of case law in Florida is that "actual residence is an essential quality to support a homestead", and is "designed for the head of the family for the family's protection", to use the language of Justice Terrell in Anderson Mill & Lumber Co. v. Clements, 1931, 101 Fla. 523, 134 So. 588, text 592. (Emphasis supplied). The rule is aptly stated by Judge Kanner for this Court in Brown v. Hutch, Fla.App. 1963, 156 So.2d 683:
"Generally, a family, for homestead purposes, includes at least two persons living together as one family under direction of one of them, who is recognized as the `head of the family'. Hussa v. Hussa, Fla. 1953, 65 So.2d 759; 16 Fla. Jur., Homesteads, Section 28, page 291. For determination of the existence of a family relationship, there are, in Florida, two basic recognized tests to be met, either singly or in combination: (1) a legal duty to maintain arising out of the family relationship; (2) a continuing communal living by at least two individuals under such circumstances that one is regarded as the person in charge. Crosby and Miller, Our Legal Chameleon, 2 Fla.L.Rev. 24; Beck v. Wylie, Fla. 1952, 60 So.2d 190; 16 Fla.Jur., Homestead, section 27, page 290." (Emphasis supplied).
In Barlow v. Barlow, 1945, 156 Fla. 458, 23 So.2d 723, the wife, Lucie Hoage Barlow, left the family home about two weeks before her husband's death, moving out "for keeps" and carrying her belongings with her and securing an attorney with respect to her marital differences. After the husband's death she returned to the home, asserting it was his homestead when he died and she therefore *642 had homestead rights therein as his widow. Justice Terrell, again speaking for the Supreme Court, posed the legal question: "Stripped of excess verbal apparel the ultimate question for determination is whether or not in law, Lucie Hoage Barlow may be said to have abandoned her husband and the home when she left them prior to her husband's death". In resolving the question adverse to the widow, the Court said:
"Under the law of this State, the homestead is not something to toy with and use as a `city of refuge' from the law's exactions. It was provided for the benefit of the family as a place of actual residence, as a haven where integrity, patriotism and respect for civil and moral virtues is generated. It is the legal atom that neither scientist nor legalist have discovered the means to crack. It can be waived by abandonment or by alienation in the manner provided by law. Nelson v. Hainlin, 89 Fla. 356, 104 So. 589.
* * * * * *
The mere fact of being the wife of Barlow does not entitle her to homestead rights in his estate, neither do we find anything in the facts detailed that would in equity entitle her to the homestead. * * * Her conduct was in every sense consistent with abandonment and inconsistent with any purpose of return. Under such a state of facts she will not be permitted to return and lay claim to the homestead after Barlow is dead."
The fundamental principle of homestead law that actual occupancy of the home by the wife is essential where the relationship of husband and wife is relied upon to constitute the "family" is well established in Florida case law. Collins v. Collins, 1942, 150 Fla. 374, 7 So.2d 443; Hill v. First Nat. Bank, 1920, 79 Fla. 391, 84 So. 190, 20 A.L.R. 270; In re: Noble's Estate, Fla. 1954, 73 So.2d 873; Milton v. Milton, 1912, 63 Fla. 533, 58 So. 718; Bigelow v. Dunphe, Fla. 1940, 143 Fla. 603, 197 So. 328; Richards v. Byrnes, 1943, 153 Fla. 705, 15 So.2d 610; Miller v. Finegan, supra; Davis v. Miami Beach Bank & Trust Co., 1930, 99 Fla. 1282, 128 So. 817; Jordan v. Jordan, 1931, 100 Fla. 1586, 132 So. 466; Johns v. Bowden, 1914, 68 Fla. 32, 66 So. 155, and Hussa v. Hussa, supra.
It may be conceded there are a few isolated cases which seem to "water down" this principle. Brodgon v. McBride, Fla. 1954, 75 So.2d 770; Lockhart v. Sasser, 1945, 156 Fla. 339, 22 So.2d 763; O'Neal v. Miller, 1940, 143 Fla. 171, 196 So. 478, 129 A.L.R. 295; Marsh v. Hartley, Fla.App. 1959, 109 So.2d 34, and Osceola Fertilizer Co. v. Sauls, 1929, 98 Fla. 339, 123 So. 780.
But a close analysis of these latter cases will reveal that they "went off" on the varying and sometimes equivocal facts existing in each case. They may well be dismissed, or even harmonized with the prevailing rule, by applying the language of Judge Hutcheson of the 5th U.S. Court of Appeals in a leading homestead case from Florida, Croker v. Croker, CCA5 1931, 51 F.2d 11:
"It will not serve any purpose to discuss or analyze these cases. All of them are really fact cases wherein conclusions, are reached upon the controlling facts therein, and the same judge would, upon their varying facts, have decided all of them in principle in the same way."
Implicit in any fair review or appraisal of all the reported Florida cases on the subject of homestead is the irresistible conclusion that, in the last analysis, the overriding test is whether or not it is the "family home" in actuality, and has the element of permanency.
Thus, in addition to the usual term "family home", Justice Drew in Solomon v. Davis, Fla. 1958, 100 So.2d 177, 67 A.L.R.2d 774, used the phrases "family unit", "family relationship", "household", "family group", and "common home", to illustrate the quality necessary to make an ordinary home a Constitutional homestead. The opinion in *643 Croker amplifies this thought, applicable here, in the following language:
"It is also clearly settled by the Florida decisions that while `the provisions of the homestead laws should be carried out in the liberal and beneficient spirit in which they were enacted, but at the same time great care should be taken to prevent them from becoming the instruments of fraud,' Jetton Lbr. Co. v. Hall, 67 Fla. 61, 64 So. 440, 51 L.R.A. (N.S.) 1121, those decisions strictly declare that, `The "exemptions" allowed do not attach to real estate that is not occupied as the home of the family.' The place must be not a theoretical, but a real place of residence. Solary v. Hewlett, 18 Fla. 756; Matthews v. Jeacle, 61 Fla. 686, 55 So. 865; Pasco v. Harley, 73 Fla. 819, 75 So. 30, 32.
Under the Florida decisions, actual occupancy of a home with intention to remain there and make it the home of the family, the place of their actual use and occupancy, is essential to the homestead right. Loring v. Wittich, 16 Fla. 498; Oliver v. Snowden, 18 Fla. 823, 43 Am.Rep. 338; Drucker v. Rosenstein, 19 Fla. 191. Further, the right to the exemption may be lost after it accrues by the owner ceasing to be the `head of a family residing in this state,' Matthews v. Jeacle, 61 Fla. 686, 55 So. 865, 867; Herrin v. Brown, 44 Fla. 782, 33 So. 522, 103 Am.St.Rep. 182; or by the abandonment of the property as the home of the family, Murphy v. Farquhar, 39 Fla. 350, 22 So. 681; Pasco v. Harley, 73 Fla. 819, 75 So. 30, 33.
In these respects the decisions of Florida but emphasize and confirm that policy which underlies this institution of purely American origin, that it is designed to secure and does secure to residents of the state the secure protection of a family home; or as stated in Stanton v. Hitchcock, 64 Mich. 316, 31 N.W. 395, 8 Am.St.Rep. 821, quoted with approval in Tromsdahl v. Nass, 27 N.D. 441, 146 N.W. 719, 721, 52 L.R.A. (N.S.) 746: `The state's guaranty of the right of homestead was designed to protect those who had subjected themselves to its laws, and acted in reliance on them, but not to treat as homes what are not homes, or give powers to non-residents which could not, under any circumstances, be of use to them personally.'
* * * * * *
For it is not the nice distinctions inherent in legal words, but the fact of actual use and occupancy of the home with the intention of permanency, which gives the exemption. Chitty v. Chitty, 118 N.C. 647, 24 S.E. 517, 32 L.R.A. 394; Smith v. Croom, 7 Fla. 81."
Testing the stipulated facts here in the crucible of our foregoing observations, we hold as a matter of law that the home on the ten acre tract occupied by Garrett E. Van Meter at the time of his death on October 7, 1966, was not his homestead in the Constitutional sense and that the widow was not entitled to the benefits thereof as such.
He had occupied it as his home for well over twenty-one years before he died. On March 22, 1955, his wife, after having lived with him in the family relationship on the premises for ten years, left him and the home (whether for just cause is immaterial), and to all intents and purposes voluntarily abandoned the premises as her home. She moved away and the following day, March 23, 1955, filed a Separate Maintenance proceeding unconnected with divorce in the local Circuit Court. Seven years later, on October 7, 1962, she completed the Separate Maintenance case by procuring entry of Final Decree therein, stating she would never live with him again. She first lived upon a separate two and a half acre tract which he fixed up for her, which was later sold by mutual consent and the proceeds of sale divided between them, after which until his death she lived in a rented place in Clearwater, with him paying the rent and otherwise supporting her.
While not necessarily conclusive, it is relevant to consider the legal effect of her *644 Final Decree. F.S. § 65.11 F.S.A., provides:
"65.11 Effect of decree of alimony
A decree of alimony granted under § 65.08 and § 65.09 [alimony unconnected with divorce] shall release the wife from the control of her husband, and she may use her alimony, and acquire, use and dispose of other property, uncontrolled by her husband; * * *".
The finding of the County Judge that the husband "was responsible for her and did support her up to the time of his death" and that the ten acre tract upon which he lived alone "should have been available" to her "during his lifetime", is not sufficient to warrant the adjudication of such premises as a Constitutional homestead. There had been no "family relationship" on the premises for eleven and a half years before his death.
The order appealed is accordingly reversed and the cause remanded to the County Judge's Court for proceedings not inconsistent with the views herein expressed.
Reversed and remanded.
LILES, C.J., and MANN, J., concur.