**EDWARD LEASING CORPORATION, Plaintiff,**

v.

**Ulf D. UHLIG, et al., Defendants.**

**No. 85–3650–CIV.**

United States District Court, S.D. Florida.

Feb. 5, 1987.

Eric J. Goldring, Goldring & Goldring, Maplewood, N.J., Richard M. Goldstein, Goldstein & Tanen, Miami, Fla., for plaintiffs.

James A. Dixon, Jr., Dixon, Dixon, Hurst & Nicklaus, Miami, Fla., for defendants.

## AMENDED ORDER

MARCUS, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judgment, filed with the Court on March 17, 1986. Upon careful review of the pleadings and proceedings to date, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment be and the same is hereby DENIED, for the reasons stated below.

### I.

The present cause of action finds its origin in an earlier action in which Plaintiff, a Delaware corporation with its principal place of business in New Jersey, successfully sued to recover losses incurred because of the alleged failure of several named Defendants to repair a charter vessel owned and commercially operated by Plaintiff. *Edward Leasing Corporation v. Uhlig & Associates, Inc., et al.*, No. 83–2502. This earlier case was presided over by the Honorable James W. Kehoe, United States District Judge, Southern District of Florida. In the Findings of Fact and Conclusions of Law issued by Judge Kehoe, which we adopt here, a marine repair outfit named Uhlig & Associates was found to have breached its contract with Plaintiff by failing to repair Plaintiff's vessel within a reasonable period of time, and by failing to follow manufacturer's specifications in performing testing procedures. The Court also found that Uhlig & Associates' failure to follow manufacturer's specifications in its repair operations constituted negligence. Plaintiff, on the other hand, was found to have been contributorily negligent because it took the vessel to sea despite Uhlig & Associates' repeated warning that the vessel was not

properly repaired and should not leave its berth.

On July 20, 1984, Judge Kehoe issued a Final Judgment Order, awarding Plaintiff with sixty percent recovery for repair costs and lost charter revenues resulting from Uhlig & Associates' inadequate repair efforts. This award, as stated in the Final Judgment Order, amounted to $189,696.18, plus costs and attorney's fees. In later orders, costs were declared to be $7,779.05, and attorney's fees were set at $45,000.00, bringing the total judgment to $242,475.23. (Orders Awarding Attorney's Fees and Taxing Costs, November 15, 1985.)

Pursuant to Uhlig & Associates failure to satisfy the aforesaid Final Judgment, Plaintiff filed with the Court a Motion to Impose Constructive Trust or Equitable Lien, Injunction and/or Record *Lis Pendens* with respect to a certain parcel of real property and permanent structures thereon owned by Ulf and Bessie Uhlig, the former being the President and Chief Operating Officer of Uhlig & Associates and an individual defendant in *Edward Leasing Corporation v. Uhlig & Associates, Inc.* The property at issue is located at 8925 S.W. 188th Street, Miami, Dade County, Florida, and has been more fully described as:

> The West ½ of the South 323 Feet of the South ½ of Tract 8, less the South 25 Feet thereof, in PERRINE GRANT SUBDIVISION, of the NW ¼ of Section 3, Township 56 South, Range 40 East, according to the plat thereof as recorded in plat book 4 at page 10, of the public Records of Dade County, Florida.

On August 21, 1985, Judge Kehoe issued an order granting Plaintiff's motion to impose an equitable lien on the above-described parcel of property and the permanent structures thereon. In explaining his reasons for imposing this lien, Judge Kehoe simply stated that "the equities are with the Plaintiff and, therefore, Plaintiff is entitled to the imposition of an equitable lien in its favor on the subject property."

Three months after the lien was imposed, Uhlig & Associates had still not complied with the Final Judgment rendered by Judge Kehoe. Plaintiff therefore instituted the present action on November 22, 1985, seeking judicial foreclosure of the lien upon the Uhligs' property. In the Motion for Summary Judgment currently under consideration, Plaintiff has asserted the absence of any genuine issues of material fact, and has advanced three alternative legal theories which, according to Plaintiff, call for immediate enforcement of the lien.

As its first legal ground for enforcing the lien, Plaintiff maintains that the affected property does not qualify for homestead protection under Art. X, § 4(a) of the Florida Constitution, because the majority of the property was allegedly used for business purposes by Uhlig & Associates at the time that the lien was imposed. In support of this claim, Plaintiff alleges that "[a]ll but the kitchen and one bedroom of the main house was used for business purposes by Uhlig & Associates, Inc." Plaintiff's Motion for Summary Judgment, at 3, citing Deposition of Ulf D. Uhlig, at 114–115. Additionally, Plaintiff alleges that Uhlig & Associates paid for substantial improvements in the kitchen of the main house. *Id.*, citing Exhibit 2D and 2E of Exhibits in Support of Motion to Strike Defendants' Response and Motions for Relief from Judgment and to Impose Constructive Trusts, Etc., and Plaintiff's Reply to Motion for Relief from Judgment, *Edward Leasing Corporation v. Uhlig & Associates, Inc.* Finally, Plaintiff asserts that a separate office building on the property was used solely for business purposes. *Id.*

Second, Plaintiff maintains that, even if the property could lawfully be considered homestead, the lien should be enforced under an exception to the homestead exemption allowing a lien to be imposed on homestead property where the owner of that property is found to have engaged in fraud, material misrepresentation, or other reprehensible conduct. *Id.* at 3–4.

Plaintiff's third and final basis for seeking enforcement of the lien is an assertion that the homestead exemption does not apply to "obligations contracted for the improvement of the property," and that the funds of Defendants' business, Uhlig &

Associates, were used to make improvements in the subject property at the request of Ulf and Bessie Uhlig. *Id.* at 4.

## II.

Plaintiff's first assertion in support of its Motion for Summary Judgment is that the business purposes allegedly served by Defendants' property should disqualify it from the homestead protection provided by Art. X, § 4(a) of the Florida Constitution, as amended in 1968. We do not agree.

Art. X § 4(a) of the Florida Constitution, as amended, declares:

There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by the head of a family:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family; ....

■ The Florida homestead exemption should be construed liberally, for the benefit of the homestead claimant. *Brown v. Lewis*, 520 F.Supp. 1114, 1116 (M.D.Fla. 1981) (judgment lien held not to have attached to homestead property, even upon its sale to a third party). This view has been repeatedly upheld by the courts of this state. *In re Estate of Skuro*, 467 So.2d 1098, 1099 (Fla. 4th DCA 1985) (contract for sale of homestead property executed by decedent prior to his death did not destroy homestead status of the property); *see also M.O. Logue Sod Service, Inc. v. Logue*, 422 So.2d 71, 72 (Fla. 2d DCA 1982) (headship in family and concomitant homestead protection continued in husband from date of his disappearance from home and

family until entry of final judgment dissolving marriage); *Marsh v. Hartley*, 109 So.2d 34 (Fla. 2d DCA 1959) (homestead protection provided where decedent, although he did not continuously reside on realty, and although he executed a deed purporting to convey realty to a conduit who reconveyed it to decedent and his wife as an estate by the entireties, maintained an intention to return to the homestead, and did return thereto). *But see Aetna Insurance Co. v. LaGasse*, 223 So.2d 727 (Fla.1969) (where recorded judgment lien attached to judgment debtor's remainder interest in property before such property became her homestead, judgment debtor did not acquire a possessory right sufficient to support homestead exemption claim).

■ Actual "family" occupancy and the intention to continue occupying the home have been held to be the key qualifications for homestead status and the protections deriving from that status under the Florida Constitution. "The character of property as homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence." *In re McCarthy*, 13 B.R. 389, 390 (Bankr.M.D.Fla.1981) (citation omitted). "Under the Florida decisions, actual occupancy of a home with intention to remain there and make it the home of the family, the place of their actual use and occupancy, is essential to the homestead right." *In re Estate of Van Meter*, 214 So.2d 639, 643 (Fla. 2d DCA 1968), citing *Drucker v. Rosenstein*, 19 Fla. 191 (1882); *Oliver v. Snowden*, 18 Fla. 823 (1882); and *Loring v. Wittich*, 16 Fla. 498 (1878).

While protection of the homestead as a family residence has been unambiguously established, the courts have not been entirely consistent in their views as to whether this protection should extend to portions of homestead property which are used for business-related purposes. The seeds of this debate can be found in Art. X, § 1 of the Florida Constitution, as enacted in 1885:

A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists.... *The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner;*
. . . .

(Emphasis added.)

Subsequent to the enactment of this provision and prior to the amendment of the homestead protection clause by Art. 10, § 4 of the Florida Constitution of 1968, the courts made repeated attempts to give practical significance to the 1885 constitution's guarantee of exemption from forced sale to an owner's "residence and business house." Initially the Supreme Court of Florida interpreted this provision quite restrictively. *Smith v. Guckenheimer*, 42 Fla. 1, 27 So. 900 (1900). The appellant in *Smith* was a property owner who resided with his family on the upper floor of a two-story frame building whose ground floor consisted of five storerooms, one of which he used for his own business, the rest of which he rented out. *Id.*, 27 So. at 900. The lower court, finding that the homestead exemption under Art. X, § 1 of the Florida Constitution should not extend to the rented storerooms, had "entered a decree requiring [the property owner] to select so much of the premises as would secure to him a residence and business house, dividing the building along perpendicular lines, so that his place of residence should be immediately over his place of business." *Id.* In affirming this ruling, the supreme court held that, just as rooms permanently leased to tenants in a building or buildings separate from the owner's residence and business house should not qualify for the homestead exemption, so rooms leased within the owner's home should be

denied the exemption. *Id.* at 915. Otherwise, the court warned:

the skill of the architect can be utilized to annul or successfully evade the plain provision of the organic law, and the exemptor, by its use with a single building under one roof, with its many stories piled skyward, could not only fulfill the purpose of this law in supplying himself and family with a residence and business house, but, besides, could supply a score of other families with residences and business houses, to the great pecuniary advantage of himself, but to the great wrong and injury of his creditors.

*Id.*

Acknowledging that a rule requiring perpendicular consistency of homestead-protected uses in an individual dwelling might cause an entire homestead exemption to be defeated in some cases, the court in *Smith* nevertheless called for adherence to the rule. It declared that in such cases, "the blame must fall upon the exemptor who thus devotes the same soil to the two inconsistent uses, the one legally sufficient to support the exemption contended for, the other legally sufficient to defeat or destroy it." *Id.* at 916.

The Florida Supreme Court, in the decades following *Smith*, revealed a wavering adherence to the rules set forth in that holding. In 1932, the court affirmed a lower court ruling which granted homestead exemption to an entire piece of property even though the owner had erected two buildings separate from her residence on the property: a two-story garage and a one-story paint shop, both of which she leased to tenants who ran the enterprises as independent businesses. *Cowdery v. Herring*, 106 Fla. 567, 143 So. 433, 434–35 (1932). In justifying this bald deviation from its earlier ruling in *Smith*, the court set down a somewhat hazy new principle giving ambiguous weight to humanitarian considerations:

The term "business house" is not defined in the Constitution relating to urban homestead exemptions, but it is plain that the intendment is to preserve as

exempt a reasonable portion of the homestead improvements, in addition to the owner's actual residence, when it appears that the improvements concerned are being used as a means of making the owner's livelihood.

*Id.,* 143 So. at 435. The court in *Cowdery,* despite its references to certain peripheral aspects of the *Smith* holding, *id.* at 434–35, failed to acknowledge the fundamental contradiction between *Smith's* rather draconian rule regarding rental property and its own more contextual holding.

Addressing the matter again in *McEwen v. Larson,* 136 Fla. 1, 185 So. 866 (1939), the Florida Supreme Court failed to resolve the tension between *Smith* and *Cowdery.* Declaring as non-exempt that portion of a homestead parcel upon which the owner had built an apartment house and a garage for rental purposes, the court cited *Smith* as precedent and attempted to distinguish the facts before it from the nearly identical circumstances in *Cowdery.* In order to distance the facts before it from those in *Cowdery,* the court imputed to the property owner in *Cowdery* a lesser entrepreneurial motive, describing her as having "merely rented for a tool house a small garage that had been used as part of the city homestead property." *Id.,* 185 So. at 868. This rendition of the facts seems at odds with the court's insistence in *Cowdery* that the owner's rental efforts should fall under the "business house" rubric because the owner's rental income, derived from *"buildings she had erected"* on the property, provided her "only means of support." 143 So. at 433 (emphasis added).

The Florida Supreme Court again revealed its ambivalence about the *Smith* decision in *Lockhart v. Sasser,* 156 Fla. 339, 22 So.2d 763 (1945). There, a testator's entire property was held to be homestead within the meaning of Art. X, § 1 of the 1885 constitution, even though improvements on the property included an apartment house containing six units, only one of which was occupied by the owner as his residence. *Id.,* 22 So.2d at 763. In so ruling, the court explained that the property "was not divisible by a perpendicular line without 'destroying or eliminating a

part of [the building] occupied by the owner as his home.'" *Id.* at 764. This case could be distinguished from *Smith,* the court said, because in *Smith* "the fact that the improvement was shown to be such that it was divisible by a perpendicular line appears to be the decisive factor on which the majority holding was based." *Id.* The court in *Lockhart* escaped the harsh but clear intent of its earlier ruling in *Smith,* where the court had explicitly declared that under the perpendicularity rule which it set forth, the presence of rental space on any floor of a multi-story building would defeat the homestead exemption of *all* space directly above or below that floor, regardless of whether the nonexempt improvement was "situated on the first, second, third, fourth, or tenth floor of a many-storied building." *Smith,* 27 So. at 915.

Given the Florida Supreme Court's unwillingness either to overrule *Smith* or to apply it with the vigor apparently intended by its authors, it is not surprising that the federal courts have exhibited a lack of clarity and consistency in determining the outer parameters of entrepreneurial activity allowed under the homestead exemption provision. In 1948, the United States District Court, Southern District of Florida, held as exempt an entire parcel of Miami Beach property containing a hotel in which the testatrix, in whose name the property was registered, lived with her husband. *Riley v. Doing,* 77 F.Supp. 415 (S.D.Fla. 1948), *aff'd in part, modified in part, Doing v. Riley,* 176 F.2d 449 (5th Cir.1949). In so holding, the Court did not explain why a resident hotel owner, who offered rooms to tenants on a nightly or other periodical basis, was juridically distinct from a property owner such as the appellant in the *Smith* litigation, who rented out storage rooms in a building containing his homestead residence.

The revised homestead exemption clause, Art. X, § 4 of the Florida Constitution of 1968, suggests a narrowing of the scope of exemptions allowed under Florida law. With respect to homesteads within municipal boundaries, Art. X, § 4 declares as exempt from forced sale only "the residence

of the owner or his family," a retrenchment from the broader "residence and business house" exemption provided under Art. X, § 1 of the 1885 constitution. Subsequent to the enactment of the new constitution, however, there has been a complete absence of State court decisions defining the practical implications of the new homestead exemption clause's narrower wording vis-a-vis business activities. In *Weiss v. Stone,* 220 So.2d 403 (Fla. 3d DCA 1969), *appeal dismissed,* 225 So.2d 913 (Fla.1969), the Florida Supreme Court applied the old constitutional provision, presumably because the case being appealed from had been tried prior to the passage of the new constitution. In that case, the court upheld a lower court judgment which applied the *Smith* divisibility rule to a five-unit, single-story apartment building, giving the property owner a homestead exemption only with respect to the single unit which he occupied plus an easement for ingress and egress. *Id.* at 404–05.

The only reported reference to the 1968 constitution's deletion of the "business house" language in the 1885 exemption provision appears in a very brief federal bankruptcy decision, *In re Rodriguez,* 55 B.R. 519 (Bankr.S.D.Fla.1985). The facts in that case, however, were not such that the bankruptcy tribunal was compelled to provide more than a cursory application of the old perpendicularity rule. The court in *Rodriguez* held the homestead exemption under Art. X, § 4 inapplicable to the rented part of a homestead residence, where the rental unit was separated from the owner's residence by an internal wall and had a separate entrance. *Id.* at 520.

Given the dearth of relevant authority subsequent to the enactment of the 1968 constitution, we must, in the present case, apply Art. X, § 4 in a manner which takes account of the narrower scope of that provision as revised while deriving some guidance from pre–1968 rulings pertaining to homestead exemption claims where residential and business functions were carried out on the same property. We also are bound, in considering this and all other summary judgment motions, to "view the evidence and all factual inferences there-from in the light most favorable to the party opposing the motion." *Clemens v. Dougherty County, Ga.,* 684 F.2d 1365, 1368 (11th Cir.1982), citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

According to the facts presented here, there is no dispute as to Ulf and Bessie Uhlig's ownership of the property at issue, nor is there disagreement as to the Uhligs' ongoing use of at least part of the premises as their primary family residence, since the time that they purchased the property in April 1975. The property therefore meets the threshold standard for homestead status—"actual use and occupancy" as a "home of the family"—set forth in *In re Estate of Van Meter,* 214 So.2d 639, 643 (Fla. 2d DCA 1968), and in earlier Florida Supreme Court cases. *See, e.g., Drucker v. Rosenstein,* 19 Fla. 191 (1882); *Oliver v. Snowden,* 18 Fla. 823 (1882); and *Loring v. Wittich,* 16 Fla. 498 (1878).

As the Uhlig property meets the threshold family residence requirement essential to any claim of homestead status, we can turn to an evaluation of the effect upon that status of the mixed purposes which parts of that property have served at certain times over the past several years. Mr. Uhlig, in deposition, stated that in the main house, "only two rooms have been used for personal use, that's the kitchen and one bedroom. All the other rooms had business purposes." (Transcript of Deposition of Ulf D. Uhlig, at 114–115.) In a subsequent sworn statement, Mr. Uhlig provided a fuller description of the business uses to which portions of the property were at times devoted:

2. In April 1975, my wife and I purchased the residential premises located at 8295 S.W. 188th Street, Miami. . . .

3. Shortly after purchasing the property, my wife and I declared it to be our homestead and have occupied it as same continually since that time.

4. As the business of Uhlig & Associates, Inc. began to expand, a small building at the rear of the property was converted into office space, and the offices

of Uhlig & Associates were established there.

5. As our business grew, and we employed additional personnel, the aforementioned [sic] office space could not accommodate all of the people required to operate the business, and certain of the rooms within our homestead were converted into drafting rooms and work rooms. However, we at all times continued to occupy the premises as our home, and when the business of Uhlig & Associates, Inc. did not demand the additional space, we used those spaces for residential purposes.

Affidavit of Ulf D. Uhlig, May 14, 1986, at 1–2.

The Court takes note of a further claim made by Mr. Uhlig in this affidavit, to wit, that by July 20, 1984, the date of the Final Judgment rendered in *Edward Leasing Corporation v. Uhlig & Associates, Inc.,* the business of Uhlig & Associates "was destroyed. It had no contracts, no work and no income." Uhlig Affidavit at 2. Moreover, Mr. Uhlig asserted that, as of that date, "no portion of the residence located upon the aforesaid property was occupied by Uhlig & Associates, Inc. or any other business entity." *Id.*

We note additionally Mr. Uhlig's acknowledgment that Uhlig & Associates, prior to its failure, frequently paid for improvements made in the building containing his family home, including "the addition of a kitchen, the enlargement of a study, and routine maintenance items such as replacement of windows, paving of driveways, etc." *Id.* at 3. Also noted in this regard is Mr. Uhlig's claim that all such payments were reimbursed "by my wife and me by debiting our salaries and/or our distribution of the profits of the company, or by infusions of cash into the company...." *Id.*

In light of the longstanding if somewhat inconsistently applied divisibility rule under *Smith,* we find it necessary to pursue a twofold inquiry regarding the effect of the business activities undertaken by Mr. Uhlig upon the homestead status of the property at 8295 S.W. 188th Street. First, we must

consider the effect of such activities upon the homestead exemption of the Uhligs' family residence. Second, we must evaluate the possible bearing which these activities might have upon the homestead status of portions of the property other than the Uhlig family residence; namely, the small building at the rear of the property which was used for office space.

■ With respect to the business activities conducted within the Uhlig family residence, the Court finds no factual or legal basis to support Plaintiff's claim that any or all of this structure should be denied homestead exemption under Art. X, § 4. In the century which has passed since the enactment of Florida's first homestead exemption clause, in 1885, not a single reported case has declared a residential unit occupied by the owner as his family home to be non-exempt simply because the owner conducted business activities within those premises. The facts here must be distinguished from those in *Smith* and its progeny, in which exemption from forced sale was denied with respect to those portions of homestead property, *separate from the owner's family dwelling unit,* which the owner rented to one or more tenants. *See e.g., Smith v. Guckenheimer,* 42 Fla. 1, 27 So. 900 (1900) (owner lived with his family on second floor and rented out store rooms on ground floor); *McEwen v. Larson,* 136 Fla. 1, 185 So. 866 (1939) (owner built and rented out an apartment house and garage, both of which were separate from his family's dwelling); *Weiss v. Stone,* 220 So.2d 403 (Fla. 3d DCA 1969) (owner lived in one of five units in a single-story apartment building); *In re Rodriguez,* 55 B.R. 519 (Bankr.S.D.Fla.1985) (rental unit was separated from owner's residence by an internal wall and had a separate entrance).

■ Just as reported case law does not support Plaintiff's demand that the Uhligs' actual residence be denied homestead exemption because parts of it were at times used for business purposes, the language contained in Art. X, § 4 of the 1968 constitution similarly discourages such a restrictive application of the exemption. Art. X,

§ 4 limits the homestead exemption to "the residence of the owner or his family"; it does not limit what the owner or his family can do within the four walls of that residence. Indeed, to do so would place homeowners in this state who operate businesses out of their homes, for reasons of economy or industry custom, at an enormous disadvantage relative to their counterparts who commute to their jobs.

Also relevant to a determination of the applicability of the homestead exemption to the Uhligs' residence is the status of that property at the time that the Final Judgment Order awarding damages to Plaintiff—the basis for the lien which Plaintiff now seeks to enforce—was issued. Mr. Uhlig, in his affidavit, contends that Uhlig & Associates had been "destroyed" by the date of that order, and that all business activities on the premises had therefore ceased. Uhlig Affidavit at 2. Moreover, Plaintiff did not file its request for sanctions with the Court until December 12, 1984, a date even further from the time that the Uhlig residence had reportedly last been used as a place of business. In view of the absence of business activity within the Uhlig residence as of December 12, 1984, Plaintiff's demand for summary judgment declaring that residence to be disqualified from homestead protection because of its allegedly simultaneous existence as a business office is without foundation.

Four deficiencies exist, then, in Plaintiff's motion to enforce a lien on the Uhlig residence because of business activities allegedly conducted within it. First, the clear trend of authority in the courts argues for the preservation of the homestead exemption with respect to an owner's actual dwelling, even if such dwelling also serves as a business environment. Second, the language of Art. X, § 4, guaranteeing homestead protection to family residences, does not indicate that this protection should be abridged because of business activities within the dwelling. Third, a rule denying homestead exemption to residences in which business activities are conducted would have the adverse practical consequence of discriminating against homeowners engaged in work necessarily or most practically based out of the home. And fourth, the Uhligs' residence was no longer a situs for business activity at the time Plaintiff first sought the imposition of an equitable lien. For these reasons, Plaintiff's Motion for Summary Judgment must be DENIED with respect to the Uhligs' actual residence.

■ We turn now to a consideration of the applicability of Art. X, § 4 to the small building at the rear of the Uhligs' property, which Ulf Uhlig admitted had been used by Uhlig & Associates as office space, prior to the business' collapse. If the building had still been used as a business office at the time Plaintiff's motion for sanctions was filed, enforcement of the lien with respect to the building and the ground beneath it might have been appropriate; the building is a discrete unit easily separable from the Uhlig family residence. See e.g., In re Rodriguez, 55 B.R. 519; Weiss v. Stone, 220 So.2d 403; McEwen v. Larson, 185 So. 900. However, in light of Ulf Uhlig's assertion that all business-related activities on the property had ceased well before the filing of the motion for sanctions, Plaintiff's Motion for Summary Judgment lacks necessary support with respect to this building as well.

For the reasons stated above, Plaintiff's Motion for Summary Judgment as to the enforceability of the lien must be DENIED, to the extent that it is based upon allegations that the Uhligs' property was serving business as well as residential purposes.

## III.

Plaintiff's second basis for seeking summary judgment to enforce the lien on Ulf and Bessie Uhlig's property stems from its claim that the lien was imposed "as a result of fraud or reprehensible conduct," which the courts have declared to be grounds for denying homestead protection to offending parties. Plaintiff's Motion for Summary Judgment, at 3–4, citing *Bessemer v. Gersten*, 381 So.2d 1344, 1347 n. 1 (Fla.1980) (lien can be enforced if it is imposed for fraud or material misrepresentation); *Kitzinger v. Gulf Power Co.*, 432 So.2d 188,

194–95 (Fla. 1st DCA 1983) (lien may not be imposed on homestead property absent fraud or reprehensible conduct); *Clutter Construction Corp. v. Clutter*, 173 So.2d 761, 761–62 (Fla. 3d DCA 1965) (lien may not be imposed absent fraud or reprehensible conduct).

■ Plaintiff, in its pleadings, provides no factual support for its contention that Defendants have engaged in fraudulent or reprehensible conduct and should therefore be denied homestead protection. In lieu of specific allegations, Plaintiff simply asserts that Judge Kehoe's order of August 21, 1985, imposing an equitable lien on the Uhlig property, established "as a matter of law, that there was the requisite fraud or reprehensible conduct on the part of Defendants." Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment, at 3. The fallacy of this assertion becomes apparent upon an examination of the Court's order, which makes no reference to fraud or reprehensible conduct but, rather, simply states:

> Upon a review of the memoranda of law of the respective parties, the numerous exhibits, the deposition of Ulf Uhlig and the entire file and after hearing argument of counsel, the Court finds that the equities are with the Plaintiffs and, therefore, Plaintiff is entitled to the imposition of an equitable lien in its favor on the subject property.

*Edward Leasing Corporation v. Uhlig & Associates, Inc.*, No. 83–2502 (S.D.Fla., Aug. 21, 1985) [Available on WESTLAW, DCTU database] (Order Granting Motion to Impose Equitable Lien).

In addition to the absence of any finding of fraud or reprehensible conduct, Judge Kehoe's order makes no finding as to whether the Uhlig property is homestead or non-homestead property. Judge Kehoe simply made a general assessment of the relative equities of the relevant parties' circumstances, and concluded that Plaintiff was entitled to the imposition of an equitable lien. We are not prepared to read that ruling as constituting a finding of fraud or reprehensible conduct, nor are we prepared to regard the ruling as having addressed the question of whether the subject property was homestead property in the first place. Instead, we have carefully examined the record and, finding no undisputed set of factual allegations establishing that Ulf or Bessie Uhlig engaged in fraud or reprehensible conduct, we hereby rule that Plaintiff's Motion for Summary Judgment cannot be granted on the basis of Plaintiff's unsubstantiated allegations of such misconduct.

## IV.

The third and final argument which Plaintiff marshals in support of its Motion for Summary Judgment is that it is entitled to enforcement of the lien under an exception to the homestead exemption which allows liens to be imposed upon homestead property for improvements made to the property. Plaintiff's Motion, at 4, 6. The constitutional provision relevant to this claim, Art. X, § 4(a), states that homestead property

> ... shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, *except for the payment of* taxes and assessments thereon, or *obligations contracted for house, field or other labor performed on the realty*, the following property owned by the head of a family[.]

(Emphasis added.)

In support of this claim, Plaintiff makes brief reference to allegedly unsatisfied obligations which Ulf and Bessie Uhlig had incurred for improvements and repairs on their home. Plaintiff's Motion at 6. These assertions are addressed by Ulf Uhlig in his affidavit, wherein he acknowledges that he had at various times incurred debts for home improvement work, but states that these debts, *which were owed to Defendant's business, Uhlig & Associates*, had all been paid off. Uhlig Affidavit at 3.

■ It is patently clear from the language of Art. X, § 4(a) that the exception to the homestead exemption cited by Plaintiff only applies when a lien is imposed *for unpaid obligations pertaining to improvements or repairs on homestead real-*

ty. *See, e.g., Perry v. Beckerman,* 97 So.2d 860, 863 (Fla.1957) (an obligation contracted for the erection or repair of improvements on homestead realty, to be enforceable against the homestead, must be one contracted directly for labor and materials used in the construction of the improvement). Plaintiff here seeks to enforce a lien deriving from an unpaid judgment awarding damages resulting from the negligent repair of a maritime vessel. This obligation, bearing no relationship whatsoever to improvements or repairs on Defendant Uhlig's homestead property, clearly falls beyond the scope of the home improvement exception to the homestead exemption set forth in Art. X, § 4(a).

■ The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Plaintiff has notably failed to establish its entitlement to judgment as a matter of law. First, those facts which are not in dispute, regarding the business uses to which the Uhligs' homestead property has at certain times been devoted, are insufficient to establish Plaintiff's legal right to enforcement of the lien. Second, Plaintiff's allegations as to fraudulent or reprehensible conduct by Defendants are disputed by Defendant Ulf Uhlig and are not borne out by the specific language of the Court's order imposing the lien on the Uhligs' property. Third, Plaintiff's claim is based upon a misconstruction of the exception to the homestead exemption for unpaid home improvement obligations, under Art. X, § 4(a) of the Florida Constitution.

Upon careful examination of the three underlying bases for Plaintiff's Motion for Summary Judgment, the Court finds that Plaintiff has failed to provide sufficient factual or legal grounds for any of its assertions. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment be and the same is hereby DENIED.