**In re Neil WALTER, Helen Walter, Debtors.**

**Bankruptcy No. 98–25994–BKC–RBR.**

United States Bankruptcy Court, S.D. Florida, Broward Division.

Feb. 26, 1999.

Jack F. Weins, Boca Raton, FL, for Trustee.

Eliana M. Leal, Fort Lauderdale, FL, for Debtors.

### ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIMED EXEMPTION AND GRANTING MOTION TO COMPEL TURNOVER OF NON–EXEMPT PROPERTY

RAYMOND B. RAY, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on February 4, 1999 upon the Objection of Lucy C. DiBraccio, Trustee, to Claimed Exemption and Motion to Compel Turnover of Non–Exempt Property. The Court, having reviewed the Objection and the Debtor's Response thereto, having considered the arguments of counsel and the evidence presented, and being otherwise duly advised in the premises, finds as follows.

### UNDISPUTED FACTS

On August 24, 1998, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Lucy C. DiBraccio serves as Trustee. The Debtors are citizens of Canada, but both hold resident alien cards (commonly referred to as green cards) issued by the United States Department of Justice, Immigration and Naturalization Services, allowing them to reside and work in the United States until 2003.

The Debtors own a 48' Hi–Star Motor Vessel, Canadian Registration # 30E–16410, powered by twin 425 horsepower Caterpillar Diesel Engines which they claimed as their exempt homestead pursuant to Section 222.05, Florida Statutes. The Trustee filed a timely objection to the claimed exemption.

From the time the Debtors purchased the vessel in 1990 until February, 1991, the vessel was docked at Royal Palm Marina in Dania, Florida. In February, 1991, the motor vessel was moved to a new dockage at 91 Isle of Venice, Fort Lauderdale, Florida, where the Debtors have leased dock space ever since.

The motor vessel contains living accommodations, a kitchen, and two lavatories or heads. The engines on the motor vessel are operable, and the vessel is capable of navigation. In the 25 months preceding the petition date, the motors accumulated 40 hours of running time.

The Debtors purchased the vessel in 1990 for the sum of $345,000.00. On their schedules, the Debtors originally valued the motor vessel at $225,000.00, but later amended their Schedules to reduce the value of the motor vessel to $164,000.00. The vessel is subject to a lien in favor of Toronto–Dominion Bank having an unpaid balance of approximately $156,000.00. The motor vessel is currently insured for $275,000.00.

In her Objection, the Trustee maintains that the vessel does not qualify as an exempt homestead under applicable Florida law. She requests a determination that the prop-

erty is non-exempt and, therefore, property of the estate. In response, the Debtors maintain that although Florida law does not specifically grant homestead protection to motor vessels, the homestead exemption should be construed to protect the vessel from the claims of creditors because the Debtors actually use the vessel as their residence.

## LEGAL ANALYSIS

### The Vessel Is Not Entitled to Homestead Protection

Article X, Section 4(a)(1) of the Florida Constitution provides, in pertinent part, as follows:

There shall be exempt from forced sale . . ., and no judgment, decree or execution shall be a lien thereon . . . the following property owned by a natural person: (1) A homestead . . . of contiguous land and improvements thereon . . . upon which the exemption shall be limited to the residence of the owner or his family. . . .

*Id.*

■ The Florida homestead protection serves various purposes. First, the homestead exemption relieves the state's burden of supporting destitute families. Second, it increases family stability by providing refuge from economic misfortunes. Finally, the exemption encourages property ownership and individual financial independence. *In re Kirby,* 223 B.R. 825 (Bankr.M.D.Fla.1998).

In support of their claimed exemption, the Debtor's rely on Section 222.05 of the Florida Statutes, which provides that

[a]ny person owning and occupying any dwelling house, *including* a mobile home used as a residence, or modular home, on land not his or her own which he or she may lawfully possess, by lease or otherwise, and claiming such house, mobile home, or modular home as his or her homestead, shall be entitled to the exemption of such house, mobile home, or modular home from levy and sale as aforesaid. (emphasis added).

The Debtors maintain that by using the term "including" in the above section, the legislature sought to extend the homestead exemption to other, perhaps unforeseeable, types of living quarters, not merely mobile or modular homes.

The Debtors also refer the Court to various cases in which travel trailers, motor homes, and houseboats were found to qualify as exempt homesteads. *See, In re Meola,* 158 B.R. 881 (Bankr.S.D.Fla.1993) (32–foot travel trailer qualified as exempt homestead); *Mangano,* 158 B.R. 532 (Bankr.S.D.Fla.1993) (Sports Coach entitled to exemption); *Miami Country Day School v. Bakst,* 641 So.2d 467 (Fla. 3rd DCA 1994) (houseboat entitled to homestead protection).

It is the Trustee's position that Section 222.05 limits the exemption to a "dwelling house", a "mobile home", or a "modular home". Since the Debtors' vessel is a "motor boat" as defined in Section 327.02(20) [1], and is capable of moving from place to place on navigable inland waters or the open seas, the Trustee maintains that the vessel is personal property, not real property.

The Trustee cites the case of *In re Major,* 166 B.R. 457 (Bankr.M.D.Fla.1994), wherein the debtors claimed their 34' motor boat as exempt. The boat was equipped with plumbing, electrical and phone services through hook-ups to shore utilities, and it had a motor which was inoperable. The debtors lived on the boat continuously since the sale of their homestead real property in 1992.

While recognizing that the homestead exemption should be liberally construed, the Court explained that the matter was difficult since what was claimed as the homestead was "not the type of property which conventionally has been accepted to qualify as a homestead, i.e. land and the home. . . ." *Id.* at 458.

Looking to the Florida Constitution and Section 222.05, the Court found that "it would be a totally unwarranted extension of the homestead provisions of the Florida Constitution to include a boat which was certainly not designed to serve as a permanent

---

1. Section 327.02(2) defines a "motor boat" as "any vessel which is propelled or powered by machinery and which is used or capable of being used as a means of transportation on water."

dwelling for anybody...." *Id.* at 459. Although the Court stated that a liberal construction of the laws may have allowed a debtor to protect a houseboat, which is specifically designed to be a permanent dwelling, the subject vessel was a moveable chattel but for the fact that the owners did not have the funds to repair the motor. The Court found that fact alone to belie the permanency requirement of the homestead exemption. *Id.*

The Trustee also cites the case of *Miami Country Day School v. Bakst,* 641 So.2d 467 (Fla. 3d DCA, 1994), wherein the debtor sought homestead protection for her houseboat. The houseboat was the debtor's sole residence for many years and was fully equipped for occupancy. It was never equipped with a motor, and it had been towed to the location where it was docked. The Court upheld the claimed homestead exemption, distinguishing the *Major* case on the basis that the houseboat could not be used as a vehicle.

■ Having reviewed the Florida Constitution, Florida Statute § 222.05, and the relevant case law, the Court finds that the motor vessel in this case, which is a navigable vehicle with Canadian registration, is not the type of property the legislature sought to protect as a homestead. The Court follows the reasoning of the *Major* Court in finding that it would be an unwarranted extension of the homestead protection afforded by the Florida Constitution to protect the instant vessel, which is designed to serve as a recreational vehicle rather than a permanent dwelling.

### The Debtors, as Canadian Citizens, are not Entitled to a Florida Homestead Exemption

As stated above, the Debtors are Canadian citizens, although both hold Resident Alien Cards allowing them to reside and work in the United States until 2003. While the Court notes that "[c]anadian citizens are not required to obtain a visa in order to enter the United States as visitors, ... they must have a permanent visa if they intend to reside in this country indefinitely...." *In re Cooke,* 1 B.R. 537, 539 (Bankr.M.D.Fla.1979); Title 8 U.S.C. § 1304; 8 C.F.R. §§ 212.1 and 245

(1996). In addition, they must register as resident aliens and be in possession of an alien registration receipt card at all times. § 1304(e).

Several courts have addressed the issue of whether aliens are entitled to claim a homestead exemption in the State of Florida. For instance, in *In re Gilman,* 68 B.R. 374 (Bankr.S.D.Fla.1986), the debtor sought to claim his Florida residence as exempt. At the time he filed his bankruptcy petition, the debtor held a B–1 visa which permitted him to operate a business, but he did not possess a permanent visa. Relying on *Cooke v. Uransky,* 683 F.2d 130 (5th Cir.1982), Judge Weaver held that because the debtor failed to hold a permanent visa, he was "not legally entitled to formulate the requisite intent to remain permanently within the State of Florida" and, therefore, he could not claim his Florida home as the permanent residence of his family. *Gilman,* 68 B.R. at 376.

Similarly, in *In re Boone,* 134 B.R. 979 (Bankr.M.D.Fla.1991), the debtor sought to claim her Florida home as exempt. Although she was a Canadian citizen, the debtor argued that she was entitled to the exemption because she held a valid social security number, she was legally employed in the United States, and she intended to remain a permanent resident of Florida. Nevertheless, given that the debtor did not hold a permanent visa, the Court stated that she did not have the legal right to remain in the United States. As such, she could not form the intent to legally remain permanently in the United States or the State of Florida, and she could not claim her residence as exempt.

Most recently, in *In re Levy,* 221 B.R. 559 (Bankr.S.D.Fla.1998), the Bankruptcy Court for the Southern District of Florida again recognized that non-immigrant aliens in the United States on temporary visas cannot formulate the requisite intent to establish a permanent residence. Without this requisite intent, no domicile exits, and "the lack of a domicile in any state within the 180–day period immediately preceding the filing of the petition is fatal to any right of exemption under the laws of the state." *Id.* at 567.

Finding no reason to distinguish this case from those cited above, the Court finds that the Debtors, Canadian citizens without permanent visas, are not entitled to claim their vessel, or any other property, as a homestead.

Accordingly, it is hereby

ORDERED AND ADJUDGED as follows:

1. The Trustee's Objection to Claimed Exemption is GRANTED.

2. The Trustee's Motion to Compel Turnover of Non–Exempt Property is GRANTED.

3. The Debtors shall turn over the motor vessel to the Trustee within thirty (30) days form the date of this Order or within such other time period as the parties may agree.