**In re Robert Anthony HANING d/b/a Quick Credit Used Cars and Brenda Kay Haning, Debtors.**

No. 99–09319–3F3.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 20, 2000.

———

Christopher R. Demetros, Jacksonville, for Debtors.

Robert J. Perry, Jr., Jacksonville, for Creditor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on an Objection to Exemptions and a Motion to Dismiss or Convert Case to Chapter 7 filed by James Jay Smith ("Creditor") on February 22, 2000. (Docs. 16–17.) The Court held evidentiary hearings on these matters on March 22, 2000 and March 30, 2000. Upon the conclusion of the presentation of evidence, the Court asked for submissions in lieu of closing argument. Upon review of these submissions and the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On October 9, 1998 Robert Anthony Haning and Brenda Kay Haning ("Debtors") purchased real property for the sum of $111,947.61.[1] Debtors claim this real property as their homestead ("Home-

---

1. The legal description of the Homestead is: Lot 9, Block 2, Ingle Forest Unit No. 1, according to the Plat recorded in Plat Book 22, Page 38, current public records of Duval County, Florida.

stead"). Debtors gave Creditor a Promissory Note in the amount of $111,947.61 and agreed to make monthly payments to Creditor in the amount of $1,202.99. Debtors gave a mortgage to Creditor on the Homestead to secure the note. After their purchase Debtors constructed a 1600 square foot garage on the Homestead which is appurtenant to their residential home.

At some point after May 1, 1999, Creditor filed a foreclosure Complaint based on Debtors' defaulting on the note and mortgage by failing to make payment.[2] On July 15, 1999 Debtors filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, Case No. 99–05352–3P3. On October 18, 1999 the Court entered an Order Granting Adequate Protection to Creditor. On December 7, 1999 the Court entered an Order of Dismissal for Debtors' failure to make interim payments as required by 11 U.S.C. § 1326(a)(1). On December 15, 1999 Mamie L. Davis, Chapter 13 Trustee, filed a Chapter 13 Final Report indicating that Debtors made no payments to the Trustee during the course of their first Chapter 13 case.

On December 6, 1999 Debtors filed a second voluntary Chapter 13 petition listing total assets of $153,729.00 and total liabilities of $232,176.24. Debtors listed the Homestead as having a value of $116,000.00 with no equity. Debtors listed a $10,500.00 judgment lien on the Homestead that Debtors claim is unsecured in the amount of $6,500.00. Debtors listed an additional $2,409.76 secured debt for 1999 property taxes on the Homestead.

As of the date of their second Chapter 13 bankruptcy filing, Debtors owed $110,514.00 to Creditor. The Duval County Property Tax Appraiser's Office appraisal value for the Homestead is $146,393.00. Creditor stated that he last received payment from Debtors in May 1999 but that Debtors' check was returned for insufficient funds. Debtors' forty-eight (48) month Chapter 13 Plan provides for monthly payments to Creditor in the amount of $1,202.00, which includes Debtors' regular monthly mortgage payment and monthly payments of $229.49 for a $9,400.00 arrearage on the mortgage. Creditor is also secured by vehicles owned by Debtors in the amount of $5,941.00. Debtors propose to pay this amount plus interest over the life of their Chapter 13 Plan.

Debtors listed a current monthly income of $4,036.50 and current monthly expenditures of $2,043.00, with $2,060.13 to be paid into their Chapter 13 plan each month. Since September 1999 Robert Haning has been self-employed as a contractor in the construction business. Prior to that, Mr. Haning was a used car dealer. Since October 1987 Brenda Haning has been employed as a bookkeeper by the Duval County School Board. Robert Haning listed no income between 1997 and 1999 from employment or operation of business in Debtors' Statement of Affairs. Brenda Haning lists income of $15,467.00 for 1997, $16,318.00 for 1998, and $13,000.00 for 1999.

Debtors' Schedule C—Property Claimed as Exempt lists the following:

| Description of Property | Specific Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property, Without Deducting Exemptions |
|---|---|---|---|
| 1992 Nissan 300ZX 54,000 Miles | FSA § 222.25(1) | 1,000.00 | 8,000.00 |
| Bracelet | Art. 10, § 4(a)(2), FSA § 222.061 | 10.00 | 10.00 |

2. Debtors failed to properly insure the Homestead after conveying to Creditor that insurance had been obtained. Additionally, Creditor claims that Debtors' insurance application included material errors and misstatements.

| | | | |
|---|---|---|---|
| Homestead Property Located at 3465 Thalia Road, Jacksonville Beach, FL | Art. 10, § 4(a)(2), FSA § 222.01, 222.02 | 116,000.00 | 116,000.00 |
| Lady's Jewelry | Art. 10, § 4(a)(2), FSA § 222.061 | 129.00 | 200.00 |
| Lady's Used Clothing | Art. 10, § 4(a)(2), FSA § 222.061 | 50.00 | 50.00 |
| Man's Used Clothing | Art. 10, § 4(a)(2), FSA § 222.061 | 50.00 | 50.00 |
| Miscellaneous Household Goods and Furnishings | Art. 10, § 4(a)(2), FSA § 222.061 | 1,741.00 | 1,741.00 |
| Watch | Art. 10, § 4(a)(2), FSA § 222.061 | 10.00 | 10.00 |
| Wedding Band | Art. 10, § 4(a)(2), FSA § 222.061 | 10.00 | 10.00 |

Patricia Boney, who the Court has qualified as an expert appraiser of tangible personal property, testified that she did an appraisal of Debtors' personal property and placed a value of $22,546.00 on that property. Debtors' valued this personal property at $16,229.00. Excluding a Stinger Car Lift valued at $2,500.00 and a 1992 Nissan 300 ZX in which Debtors have no interest from Ms. Boney's original appraisal, Debtors' remaining tangible personal property has an appraised value of $14,421.00.

Creditor's Objection is to Debtors' claimed homestead and personal property exemptions. Creditor states in his Objection that:

Debtors have constructed an eight (8) car garage on property they claim as their homestead, such garage is used for business purposes, and such property must be partitioned between the part being used for homestead purposes and the part being used for business purposes as the entire parcel listed as the Debtors' homestead does not qualify for the exemption of Article 10, Section 4(a)(1) and § 222 Fla. Stat. (1999), and the Debtor's personal property exceeds the allowable exemption amount pursu-

ant to Article 10, Section (a)(2) and § 222 Fla. Stat. (1999).

(Doc. 16.) Creditor claims the garage is being used for business purposes and should be partitioned. Debtors earned at least $6,500.00 of income from use of the garage in an eighteen-month period prior to filing. However, the majority of this income is attributed to work performed for Creditor.[3]

Creditor claims that cause exists to dismiss Debtors' case under 11 U.S.C. § 1307. Creditor claims that Debtors' bankruptcy Schedules and Statement of Financial Affairs are inaccurate and contain material omissions. Creditor states the following inaccuracies and omissions exist:

(a) Debtors list non-homestead real property with a value of $21,500.00 with a corresponding debt of $21,500.00. Creditor claims the property was purchased for $30,000.00 and is under contract to be sold for $32,500.00 with no corresponding debt.

(b) Debtors did not list any boats, motors and accessories; office equipment, furnishings and supplies; machinery, fixtures, equipment and supplies used in business; inventory; or other personal

---

**3.** Creditor introduced Exhibit 18 titled "Money Paid to Robert Haning by James Jay Smith". This document lists work performed between January 20, 1998 and September 25, 1998 in the total amount of $6,537.50. There is an addition to the list noting $1,675.00 worth of labor. Much of this work was done for Creditor on his custom show cars. Mr. Haning testified that he was given credit on mortgage and interests payments for this work.

property of any kind not already listed. Creditor claims Debtors own office material, machinery, and other equipment and that Trustee's Appraiser located these assets.

(c) Creditor claims a large discrepancy exists between Debtors' valuation of personal property and the appraiser's valuation.

(d) Mr. Haning, represents monthly income of $2,599.98 and Mrs. Haning, represents monthly income of $1,436.52. Creditor claims Mr. Haning's monthly income fluctuates based on his status as a contractor.

(e) Mr. Haning listed no income from 1997 to 1999. Mr. Haning earned income during this period in addition to proceeds from a disability insurance policy.

### CONCLUSIONS OF LAW

#### a. Objection to Exemptions

■ Upon filing for bankruptcy protection, all property belonging to a debtor becomes property of the estate. *See* 11 U.S.C. § 541 (West 2000). Nonetheless § 522 of the Bankruptcy Code allows a debtor to retain assets which are exempt from the bankruptcy estate. Section 522 of the Bankruptcy Code provides in pertinent part that:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection....

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in

which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law.

11 U.S.C. § 522.

■ While the Bankruptcy Code allows a debtor to choose between exemptions, Florida citizens are not entitled to the federal exemptions listed in § 522(d). Florida citizens are entitled to only those exemptions allowed by state law, which exemptions are enumerated in the Florida Constitution (Article X, section IV) and the Florida Statutes (FLA.STAT. § 222.201). *See Crews v. First Colony Life Ins. Co. (In re Barker),* 168 B.R. 773, 775–76 (Bankr. M.D.Fla.1994) (discussing extent of Florida exemptions). The Florida Constitution provides that:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemp-

tion shall be limited to the residence of the owner or the owner's family;

(2) personal property to the value of one thousand dollars.

(b) These exemptions shall inure to the surviving spouse or heirs of the owner.

(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.

FLA. CONST. art. X, § 4. Florida Statutes § 222.25 allows additional exemptions for a "debtor's interest, not to exceed $1,000 in value, in a single motor vehicle as defined in s. 320.01." FLA. STAT. § 222.25 (West 2000).

> Prior to the 1968 Amendment of Article X, § 4 of the Florida Constitution, a homestead exemption was allowed for the "residence and business house of the owner." This "business property test" allowed an owner to claim as exempt not only his dwelling house but also other structures which were used for business or were income-producing rental properties.

*In re Aliotta*, 68 B.R. 281, 282 (Bankr. M.D.Fla.1986) (citations omitted).

Revised Article X, § 4 eliminates the term "business house" from the constitutional homestead exemption.[4] Judge Stanley Marcus thoroughly reviewed the history of the term "business house" and

subsequent interpretations of the revised Article X, § 4 in *Edward Leasing Corp. v. Uhlig*, 652 F.Supp. 1409, 1412–17 (S.D.Fla. 1987). The Court noted "a complete absence of State court decisions defining the practical implications of the new homestead exemption clause's narrower wording vis-à-vis business activities". *Uhlig*, 652 F.Supp. at 1415. The Court stated:

> With respect to the business activities conducted within the Uhlig family residence, the Court finds no factual or legal basis to support Plaintiff's claim that any or all of this structure should be denied homestead exemption under Art. X, § 4. In the century which has passed since the enactment of Florida's first homestead exemption clause, in 1885, not a single reported case has declared a residential unit occupied by the owner as his family home to be non-exempt simply because the owner conducted business activities within those premises. The facts here must be distinguished from those in *Smith [v. Guckenheimer*, 27 So. 900, 42 Fla. 1 (1900)] and its progeny, in which exemption from forced sale was denied with respect to those portions of homestead property, separate from the owner's family dwelling unit, which the owner rented to one or more tenants. Just as reported case law does not support Plaintiff's demand that the Uhligs' actual residence be denied homestead exemption because parts of it were at times used for business purposes, the language contained in Art. X, § 4 of the 1968 constitution similarly discourages such a restrictive application of the exemption. Art. X, § 4 limits the homestead exemption to "the residence of the owner or his family"; it does not limit what the owner or his family can do within the four walls of

---

**4.** Interpreting the meaning of "business house", the Florida Supreme Court stated that:

> The term "business house" is not defined in the Constitution relating to urban homestead exemptions, but it is plain that the intendment is to preserve as exempt a rea-

sonable portion of the homestead improvements, in addition to the owner's actual residence, when it appears that the improvements concerned are being used as a means of making the owner's livelihood. *Cowdery v. Herring*, 106 Fla. 567, 143 So. 433, 435 (1932).

that residence. Indeed, to do so would place homeowners in this state who operate businesses out of their homes, for reasons of economy or industry custom, at an enormous disadvantage relative to their counterparts who commute to their jobs.

*Uhlig,* 652 F.Supp. at 1416–17 (citations omitted).

In addressing whether a debtor conducting a landscape business on their claimed homestead is entitled to the homestead exemption, Judge Steven H. Friedman stated:

Unless a debtor leases property to a third party or allows a third party to use the property for business purposes, such debtor who maintains a residence on his homestead property is not prevented from making a living off the property, provided that the property is restricted in size to the limits set forth in the Florida Constitution.

*In re Nelson,* 225 B.R. 508, 509–10 (Bankr. S.D.Fla.1998). *See also In re Blocker,* 242 B.R. 75, 77 (Bankr.M.D.Fla.1999) (noting majority view among Florida bankruptcy courts is to disallow claimed homestead exemptions pursuant to Article X, § 4 of the Florida Constitution when debtors lease all or a portion of the alleged homestead to a third party who occupies the leased premises, whether in a residential or business capacity).

■■■■ The Florida Constitution grants debtors a liberal exemption for homestead property. *See Englander v. Mills (In re Englander),* 95 F.3d 1028, 1031 (11th Cir. 1996). Exceptions to the homestead exemption should be strictly construed in favor of claimants and against challengers. *See In re Ehnle,* 124 B.R. 361, 363 (Bankr. M.D.Fla.1991) (citing *Graham v. Azar,* 204 So.2d 193 (Fla.1967)). The burden is on Creditor to establish with preponderance of the evidence that Debtors in fact are not entitled to the exemptions claimed. FED. R. BANKR. P. 4003(c). *See also In re Ehnle,* 124 B.R. at 363 (placing burden on objecting party to establish with prepon-

derance of evidence that debtors are not entitled to claimed exemption).

■■■■ The listed Homestead is clearly Debtors' primary residence and there is no evidence that Debtors lease any portion of that property. The only issue is whether the exemption should be disallowed based upon evidence that Debtors received income from use of their garage.

Following the logic and holdings of *Uhlig* and *Nelson,* the Court overrules Creditor's objection as to Debtors' Homestead. *See Uhlig,* 652 F.Supp. at 1416–17; *Nelson,* 225 B.R. at 509–10. The fact that debtors earn income from use of facilities located on real property within constitutionally-sanctioned area limitations claimed as their homestead does not, in and of itself, entitle creditors to partition the income producing property from the non-income producing property. Additionally, the evidence before the Court does not carry the burden necessary to sustain the objection to homestead raised by Creditor on other grounds that may be applicable.

■■■■ The Florida Constitution allows Debtors an exemption in personal property to the value of one thousand dollars ($1,000.00). *See* FLA. CONST. art. X, § 4(a)(2). Additionally, Debtors are entitled to an exemption in a vehicle not to exceed the value of one thousand dollars ($1,000.00). *See* FLA. STAT. § 222.25 (West 2000).

Debtors' schedules reflect that Debtors own personal property in excess of allowed exemptions. The Court accepts Patricia Boney's appraised value of $22,546.00 excluding the Stinger Car Lift and the 1992 Nissan 300 ZX, in which Debtors have no interest. Debtors' tangible personal property will be valued at $14,421.00 and the Court must sustain in part Creditor's objection as to Debtors' personal property to the extent it exceeds amounts allowed under Florida law.

■■■■ The Court notes that this is a Chapter 13 bankruptcy case where individ-

ual debtors with regular income are allowed to keep their property as long as they meet certain requirements. This is not a Chapter 7 liquidation where creditors may receive distribution from a trustee's liquidation of assets of the bankruptcy estate. However, the value of debtors' non-exempt personal property in Chapter 13 cases becomes an issue in the analysis of whether debtors propose a plan in good faith and their unsecured creditors will receive more than they would in a Chapter 7 liquidation.[5] *See* 11 U.S.C. §§ 1325(a)(3), (4) (West 2000) (requiring Chapter 13 plans to be proposed in good faith and that unsecured creditors receive more than in a Chapter 7 liquidation).

### b. Motion to Dismiss or Convert to Chapter 7

Section 1307 of the Bankruptcy Code provides in pertinent part that:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

11 U.S.C. § 1307(c) (West 2000).

 Dismissal based on 11 U.S.C. § 1307(c)(5) and (c)(6) does not appear to be ripe with respect to Debtors' current case. Debtors' Chapter 13 Plan, filed on December 27, 1999, has not been scheduled for a confirmation hearing and therefore not yet confirmed. However, Creditor's arguments based on 11 U.S.C. § 1307(c)(1) and (4) are valid at this point in Debtors' case. Debtors have unreasonably delayed payment to Creditor, who has not received that which is owed to him. Additionally, Debtors failed to commence making timely payments under § 1326 in this case and made no payments in their previous case. Section 1307 prescribes many bases for dismissal, however, none of these require mandatory dismissal. This Court's practice is to consider the non-exclusive § 1307 factors, look to the totality of the circumstances, and inquire as to Debtors' good faith.

 Lack of good faith in filing a bankruptcy petition is grounds for dismissal under § 1307. *See In re Earl,* 140 B.R. 728, 733 (Bankr.N.D.Ind.1992) (discussing dismissal under § 1307). However, dismissal under § 1307 for lack of good faith should be limited to extraordinary circumstances. *In re Robinson,* 18 B.R. 891, 893 (Bankr.D.Conn.1982). The requirement that a bankruptcy petition be filed in good faith is separate from the requirement that a Chapter 13 plan be proposed in good faith. *See* 11 U.S.C. §§ 1307, 1325 (West 2000). *See also In re March,* 83 B.R. 270, 275–76 (Bankr.E.D.Pa.1988) (recognizing requirement of good faith in filing and proposal of chapter 13 plan); *In re Earl,* 140 B.R. at 734–35 (distinguishing dismissal for lack of good faith under § 1307 and § 1325). In evaluating Debtors' good faith in filing this case the Court focuses its inquiry on whether Debtors seek to abuse the purpose of Chapter 13 bankruptcy protection by employing it for a purpose for which it was not intended. *See In re March,* 83 B.R. 270, 275–76 (Bankr.

---

**5.** The Court will also consider the value of Debtors' non-exempt personal property as a factor in its totality of the circumstances' analysis to determine whether Debtors' filed their petition in good faith.

E.D.Pa.1988). "Congress enacted chapter 13 to provide[ ] a highly desirable method for dealing with the financial difficulties of individuals. It creates an equitable and feasible way for the honest and conscientious debtor to pay off his debts rather than having them discharged in bankruptcy." *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434, 1436 (11th Cir.1989) (quoting H.R.Rep. No. 193, 86th Cong., 1st Sess. 2 (1959)).

■ The Eleventh Circuit states a variety of factors the bankruptcy court is to consider in determining a debtor's good faith, including the frequency with which a debtor has sought relief under the Bankruptcy Code and a debtor's motivation and sincerity in seeking relief. *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983). Analysis of a debtor's prepetition treatment of his or her creditors is also necessary. *Kitchens*, 702 F.2d at 889. The delineated *Kitchens* factors that courts should consider in determining a debtor's good faith under 11 U.S.C. § 1325 are:

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and his dependents;

(3) the amount of attorney's fees;

(4) the probable or expected duration of the debtor's Chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) the burden which the plan's administration would place on the trustee.

*Id.* at 888–89. As with any totality of the circumstances test, no one factor will dispose of the issues of this Case. Rather, the Court must consider all of the circumstances surrounding the Debtors' pre-petition activity and the filing of the Case.

■ Debtors have delayed payment to Creditor and failed to commence making timely payments as required by § 1326, both of which are grounds for dismissal under § 1307. Additionally, evidence presented raises questions of the circumstances under which Debtors contracted their debts. Nevertheless, Debtors have made payments in this case and appear to be sincere about reorganization and saving their homestead. Mr. Haning testified that he is now gainfully employed and that such employment will continue for the foreseeable future. Additionally, the Court notes the sophistication of Creditor. Creditor has entered numerous lending transactions, is a licensed real estate broker, is a certified general contractor, and sought qualification as an expert.

The Court does not ignore the frequency of filing and the filing of this Chapter 13 petition prior to Debtors' first case being dismissed. This is Debtors' second case, which the Court finds tolerable. This Court routinely dismisses cases upon a showing of multiple filings of Chapter 13 petitions. However, the Court considers the totality of the circumstances and looks to see whether debtors seek to abuse the bankruptcy process. This case appears to be on the border of use of the process and abuse of the process, and the Court finds it appropriate under the circumstances to allow Debtors to work toward a Chapter 13 discharge in this case.

As for the overlap in cases, orders of dismissal can be ministerial in nature. In this case, as with many others, Debtors' failure to make interim payments in their first case precipitated a motion to dismiss by the Chapter 13 Trustee. The Court then entered an order directing Debtors to

commence payments. This Order gave Debtors ten days to cure the arrearage created by failing to make interim payments. Once the ten-day period passed, during which Debtors made no payments, the Chapter 13 Trustee submitted an order of dismissal, which the Court entered ex parte. This is not to say the Court tolerates nonpayment. Rather, in subsequent filings when creditors seek dismissal, the Court looks to the circumstances surrounding dismissal of previous cases and whether there has been a change of circumstances.

Upon considering the totality of the circumstances in this case, the Court finds that this case should not be dismissed at this point. Debtors have the burden to make their proposed payments and set forth a plan that meets the requirements of 11 U.S.C. § 1325. Should Debtors fail to satisfy this burden they may lose bankruptcy protection. Additionally, Creditor is not precluded from raising issues of lack of good faith if this case proceeds to a confirmation hearing.

### CONCLUSION

For the reasons discussed herein, the Court finds that Creditor's Objection to Exemptions should be overruled as to Debtors' Homestead and sustained in part as to Debtors' personal property. Additionally, upon consideration of the totality of the circumstances, the Court does not find that cause exists to dismiss this bankruptcy case at this time.