**In re William L. HACKER, Debtor.**

No. 00–2519–3F7.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 7, 2000.

Thomas Lobello, III, Jacksonville, FL, for Creditor.

Bryan K. Mickler, Jacksonville, FL, for Debtor.

Gregory K. Crews, Jacksonville, FL, Chapter 7 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Objection to Debtor's Claim of Exemptions filed by David Hodges as Assignee for Citizens Bank of Macclenny ("Creditor"). (Doc. 23.) On October 4, 2000, the Court heard evidence on the Objection and took the matter under advisement. Upon review of the evidence and review of the arguments and submissions of counsel, the Court sustains Creditor's Objection to the homestead exemption and overrules the Objection to the personal property exemptions.

### FINDINGS OF FACT

Creditor holds a purchase money security interest in William L. Hacker's ("Debtor") boat, a 1981 27' Fiberfoam, Vessel No. FL8057HS, H.I.N. No. FDG01302M81A. The boat sits on dry ground awaiting repair at the Ortega River Boat Yard, 4451 Herschel St., Jacksonville, Florida. On March 15, 2000, Creditor levied on the boat. Creditor additionally claims a judgment lien on all of Debtor's personal property aboard the boat.

On March 31, 2000, Debtor filed a Chapter 13 petition in this court. In his petition, Debtor listed his street address as 4451 Herschel Street, Jacksonville, Florida. Debtor listed as his mailing address, 7890 Normandy Blvd., Jacksonville 32221, a retail establishment.

On April 14, 2000, Debtor filed his schedules. (Doc.11.) In his Schedule C, Debtor lists the boat and personal property aboard as exempt under Art. 10, § 4(a)(1) of the Florida Constitution and §§ 222.01, 222.02, and 222.05 of the Florida Statutes, "per case law." According to Schedule C, Debtor has no equity in the boat.

On June 6, 2000, Creditor objected to Debtor's claimed exemptions in the boat and in the personal property aboard the boat.

At the hearing on October 4, 2000, Debtor testified that the boat is his primary, permanent residence. Debtor testified that he attempted to navigate the boat to Ortega River Boat Yard but that the engine failed, requiring that the boat be towed in and placed on dry ground. Debtor testified that the boat is the only place

he sleeps while not traveling. Debtor asserted that the boat was hooked up to electricity and water. Debtor stated that his goal is to return the boat to seafaring shape as soon as possible. Debtor testified that he plans to repair the boat's engine as soon as he can afford it.

Creditor presented the testimony of a private investigator. On June 11, 2000, the investigator boarded and inspected the boat. The investigator testified that the boat was uninhabitable and filled with random items as if it were a storage unit. The investigator testified that there were no water, phone or electrical hookups from land to boat.

## CONTENTIONS OF THE PARTIES

Debtor contends that a boat, if it is a permanent residence, qualifies as an exempt homestead under the Florida Constitution and statutes. Debtor further argues that the boat at issue is, in fact, Debtor's permanent residence. Debtor finally contends that Creditor failed to present sufficient evidence to prove that the personal property at issue exceeded the statutory exemption cap.

Creditor contends that a motor boat such as Debtor's cannot qualify as a homestead under Florida law. Creditor alternatively argues that, even if a motor boat could support an exemption, the boat in dispute is not Debtor's primary residence.

## CONCLUSIONS OF LAW

### I. DEBTOR'S BOAT: HOMESTEAD?

**A. Relevant statutory provisions and burdens of proof.**

 Upon filing for bankruptcy protection, all property belonging to a debtor becomes property of the estate. *See* 11 U.S.C. § 541 (2000). Nonetheless § 522 of the Bankruptcy Code allows a debtor to retain assets which are exempt from the bankruptcy estate. Section 522 of the Bankruptcy Code provides in relevant part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. . . .

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law.

11 U.S.C. § 522 (2000).

[3] While the Bankruptcy Code allows a debtor to choose between exemptions, Florida citizens are not entitled to the federal exemptions listed in § 522(d). Florida citizens are entitled to only those exemptions allowed by state law, which exemptions are enumerated in the Florida Constitution (Article X, § 4) and the Florida Statutes (FLA. STAT. § 222.201 *et seq.*).

*See In re Haning,* 252 B.R. 799, 804 (Bankr.M.D.Fla.2000). The Florida Constitution provides that:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family;

(2) personal property to the value of one thousand dollars.

(b) These exemptions shall inure to the surviving spouse or heirs of the owner.

(c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.

Fla. Const. art. X, § 4 (2000).

■ Florida Statutes § 222.05 provides that an unorthodox residence may qualify for the Article X, § 4 homestead exemption under certain circumstances. Section 222.05 provides:

Any person owning and occupying any dwelling house, including a mobile home used as a residence, or modular home, on land not his or her own which he or she may lawfully possess, by lease or otherwise, and claiming such house, mobile home, or modular home as his or her homestead, shall be entitled to the exemption of such house, mobile home, or modular home from levy and sale as aforesaid.

■ Section 222.05 was not meant to be limited to mobile homes and modular homes. *See In re Bubnak,* 176 B.R. 601, 602 (Bankr.M.D.Fla.1994). Bankruptcy courts have concluded that, under certain circumstances, motor coaches and travel trailers may be imbued with the requisite permanence to qualify for homestead protection under § 222.05. *See id.* (finding that a motor coach is a homestead if a debtor's permanent residence and if permanently hooked up to utilities in situ); *see also In re Meola,* 158 B.R. 881, 883 (Bankr.S.D.Fla.1993) (finding travel trailer could qualify as homestead under the proper factual circumstances).

■ The Florida Constitution grants debtors a liberal exemption for homestead property. *See Englander v. Mills (In re Englander),* 95 F.3d 1028, 1031 (11th Cir. 1996). Exceptions to the homestead exemption should be strictly construed in favor of claimants and against challengers. *See In re Ehnle,* 124 B.R. 361, 363 (Bankr. M.D.Fla.1991) (citing *Graham v. Azar,* 204 So.2d 193 (Fla.1967)). The burden is on Creditor to establish by a preponderance of the evidence that Debtors in fact are not entitled to the exemptions claimed. Fed. R. Bankr. P. 4003(c). *See also In re Ehnle,* 124 B.R. at 363 (placing burden on

objecting party to establish by a preponderance of the evidence that debtors are not entitled to claimed exemption).

The courts that have previously addressed the boat/homestead issue have either explicitly or implicitly based their decisions at least partially on the definition of "motor boat" found in Florida Statutes § 327.02(20). Section 327.02 provides:

> (20) "Motorboat" means any vessel which is propelled or powered by machinery and which is used or capable of being used as a means of transportation on water.

FLA. STAT. § 327.02(20) (2000).

### B. Can a motor boat achieve the requisite "permanence" in order to qualify as a homestead under Florida law?

Four courts have addressed the question at hand in the instant case: whether or not a boat may qualify for a homestead exemption under Article X, § 4, Florida Constitution and under § 222.05, Florida Statutes.

Three of those, all bankruptcy courts, concluded that a boat that qualifies as a motor boat under the Florida boat-title statute, § 327.02(20), cannot qualify as exempt whether a debtor lives on the boat permanently or not. One Florida appellate court found that a boat unable to propel itself and not intended for use as a vessel may qualify as a homestead.

#### 1. Bankruptcy courts: Section 222.05 not meant to include potentially mobile motor boats designed for navigation.

First, the Middle District held in *In re Major* that a 34' boat with an inoperable engine docked at a marina and hooked up to electricity and water from land could not support a homestead exemption. *See In re Major*, 166 B.R. 457, 459 (Bankr. M.D.Fla.1994). The *Major* court noted that some unorthodox homes have been granted homestead protection, such as motor coaches and travel trailers. *See id.* at 458. However, the court concluded that "it would be a totally unwarranted extension of the homestead provision ... to include a boat which was certainly not designed to serve as a permanent dwelling for anybody, which is a moveable chattel ... not moveable only because the owners do not have the funds to repair the motor." *Id.* The court declared that the potential mobility of the boat alone negates the permanency required for the homestead exemption. *See id.* at 459.

The Southern District adopted the reasoning of the *Major* court in *In re Walter*, 230 B.R. 200, 202 (Bankr.S.D.Fla.1999). In *Walter*, debtors had lived on a 48' power boat with functioning engines for about eight years. *See id.* at 201. Debtors had taken the boat out on the water for approximately forty hours in the two years before the petition date. *See id.* The *Walter* court repeated the *Major* court's reasoning that a debtor cannot transform a moveable chattel into a homestead by choosing to leave the chattel in one place or by failing to maintain the chattel in moveable condition. *See id.* at 203. The Court also concluded that debtors, Canadian citizens, did not qualify as Florida residents for exemption purposes. *See id.*

The Middle District earlier this year reaffirmed its commitment to the *Major* precedent in *In re Brissont*, 250 B.R. 413, 414 (Bankr.M.D.Fla.2000). In *Brissont*, the boat in question had one functioning engine. *See id.* The court found the potential mobility of the boat decisive. *See id.* "Mobile boats, such as this Cabin Cruiser, are not legally capable of exemption as homestead property ... [t]he Cabin Cruiser ... is a motorboat, not a mobile home." *Id.* at 414–15. The *Brissont* court focused on the fact that the boat "was not

purchased, used, or manufactured as a dwelling place ... [it] was designed exclusively for use as marine transportation." *Id.* at 415. The court also concluded in dicta that the boat was not debtor's permanent residence. *See id.* at 414.

### 2. Florida Third District Court of Appeal: Section 222.05 meant to be inclusive of unorthodox homesteads, including some boats.

The Florida Third District Court of Appeal found that it was not an "unwarranted extension" of § 222.05 to bestow homestead protection on some boats. *See Miami Country Day School v. Bakst,* 641 So.2d 467, 469 (Fla.Dist.Ct.App.1994). The "boat" at issue in *Bakst* came equipped with four bedrooms, three bathrooms, and a garden. *See id.* The boat was never equipped with an engine and had never been intended for navigation. *See id.* at 468. The boat was towed to its mooring and was connected to land by walkways and gangplanks. *See id.* The boat was hooked up to electricity and water from shore. *See id.* The appellate court found that the trial court properly granted the boat homestead status. *See id.* at 469. The court stated that the houseboat, though moveable, had been purchased, designed and manufactured to function as a dwelling rather than as a transport. *See id.* The court distinguished *Major* by noting that the houseboat at hand could not be used as a vehicle and had never been intended for use as a vehicle, as opposed to the seaworthy, although decrepit, motor boat before the court in *Major. See id.*

### 3. Application to the instant case: Debtor's boat is a "motor boat" that does not qualify as a "dwelling" under the Florida Constitution or statutes.

▆▆▆▆ Debtor's boat in the instant case is a moveable "motor boat" that can-

not support a homestead exemption under Florida law. Debtor's boat, by virtue of its potential self-powered mobility, is a moveable chattel, not a residence.

Debtor's boat has much in common with the motor boats found unworthy of homestead classification in *Major, Walter* and *Brissont.* Debtor's boat was designed, manufactured and, until recently, used exclusively as marine transportation rather than as a dwelling place. The boat could navigate on its own power if Debtor could afford to repair its engines. Debtor only towed the boat to its "permanent" home at the Ortega River Boat Yard because its engines failed while navigating. Debtor testified that he intends to repair the boat's engines and restore it to seaworthiness. Debtor's boat, because it is "capable of being used as a means of transportation on water," qualifies as a "motor boat" under Florida Statutes § 327.02(20). As noted in the above cases, "motor boats" do not qualify as "dwelling places" under § 222.05.

Such qualification alone distinguishes Debtor's boat from the "dwelling boat" in *Bakst.* Debtor's boat, unlike the boat in *Bakst,* was not designed for use as a permanent dwelling. Debtor's boat is fitted with engines. The boat in *Bakst* was not. The boat in *Bakst* was better equipped than many houses—it even had a garden. Debtor's boat is not nearly so opulent or so functional.

There is a key factual distinction that guides the disparate holdings in *Major* and *Bakst*—a distinction between differences of architecture or form and differences of purpose. The difference between the boat in *Bakst* and a conventional house is merely a matter of architecture—the choice of medium upon which the house rests. Were a landowner to dig a pond on his

land and build a four-bedroom house with a garden on a barge floating in the pond, there would be no question that such a floating house qualifies as a homestead.

The difference between Debtor's boat and a conventional house is one of purpose and design—for what use was this vehicle or building conceived of, assembled and sold? It is clear that the latter distinction is the more fundamental and controls the issue at hand. Debtor did not buy himself a boat-shaped house or a house that floats. Debtor bought himself a vessel and intends to use it for navigation. Debtor's failure to maintain the boat at issue does not change its nature, any more than sleeping in a negligently derelict car transforms it into the sort of dwelling that the Florida legislature created the homestead exemption to protect.

Therefore, the Court finds that it would be an "unwarranted extension" of Article X, § 4 and § 222.05 to confer homestead-exempt status upon Debtor's boat. The Court finds that the boat is a moveable chattel that, by law, cannot support such an exemption.

Because the Court has found that Debtor's boat cannot support a homestead exemption by its nature, it is unnecessary to determine whether Debtor used the boat as a permanent residence or not.

## II. PERSONAL PROPERTY ABOARD THE BOAT: EXEMPT?

■ Neither party presented any credible evidence as to whether or not the personal property aboard the boat qualified as exempt under Article X, § 4 or § 222.01. Creditor bore the burden of proving that the personal property at issue exceeded the exemption limits. The Court finds that Creditor failed to carry this burden.

Therefore, the personal property at issue is exempt from the reach of Debtor's creditors.

### CONCLUSION

The Court finds that Debtor's boat is a motor boat intended for use as a vessel and not intended for use as a residence, and therefore cannot support a homestead exemption as a matter of law. It is therefore irrelevant whether or not Debtor's occupancy of the boat meets the factual elements of a homestead exemption, such as permanent residence. The Court also finds that Creditor failed to prove by a preponderance of the evidence that the personal property claimed as exempt by Debtor was undervalued and that its true value exceeded the limit for exempt personal property.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.